———o———

JOHN D. BRIGGS, Respondent, *vs.* DAVID EWART, Appellant.

1. *Bills and notes—Signature obtained without consent of maker—Liability of maker.*—The maker of a promissory note whose signature is obtained without his consent will not be held on the note, even in the hands of an innocent holder for value before maturity.

*Appeal from Pettis County Common Pleas Court.*

*Phillips & Vest*, for Appellant.

The paper sued on was not the note of Ewart, his mind gave no assent to its creation.   Nor was he guilty of laches so as to bind him.   Nor is genuineness of signature alone sufficient to bind him. (State Bank vs. McCay, Am. Law Times, April 1871, Vol. 4, pages 76, 79, 80 ; Whitney vs. Synder, reported in Albany Law Journal 7th January, 1871, No. 1, Vol. 3, p. 3 ; Foster vs. MacKinnon, 4 English, Com. Pl., 704 ; Awde vs. Dixon, 6 Exch. R., 869,  872.)

*Snoddy & Bridges*, for Respondent.

A party who signs a negotiable note upon the representations of another, taking it for granted that the paper is what it is represented to be, does so at his peril ; and if an innocent purchaser obtains the same for value before maturity, and without notice, he can recover the amount of the note from the maker.   All the authorities  indicate that the maker of negotiable paper is not permitted to interpose any defense to a note in the hands of an  innocent purchaser, except in cases where he is not chargeable with  any laches or  neglect or misplaced confidence in others ; and where a blank is in the form of a note, and is  intrusted to another either through misrepresentations or otherwise, without any authority to fill the blanks, he is yet liable to a *bona fide* holder for value. (See leading case on this subject, Putnam vs. Sullivan, 4  Mass., 45.)

If  Appellant signed the note on such false and  fraudulent representations set forth in said instruction without examination for himself, he was guilty of negligence, and as a necessary consequence, in  fault.

Even if the Respondent did sign the note upon which this suit is founded, believing that it was not a note, but under the impression that it was in reality a duplicate order, from the false and fraudulent representations of the payee in the  note, it constitutes no defense to this action.  .Although a note be obtained by robbery or theft, and  there is really no  actual fault or

negligence on the part of the maker, yet this constitutes no defense against a *bona fide* holder for value.

It is the settled law of the land that one who takes negotiable paper transferable by delivery, acquires an absolute property in it, and may recover upon it, although the paper was fraudulently put in circulation, and had been stolen, provided he takes it in good faith for a valuable consideration, even though guilty of gross negligence in doing so. The burden of proving' good faith may be on the plaintiff, but this is *prima facie* implied by possession. This doctrine is not disputed, and is reiterated in all the texts books on bills and notes.

Where the holder of negotiable paper receives it without notice of any equities that may exist between the maker and payee, he is a holder without notice and in good faith ; and the holder who is guilty of no fraud and has no actual or constructive notice, is protected. (See Parsons on Notes and Bills, Vol. 1, page 275, 276.

ADAMS, Judge, delivered the opinion of the court.

This suit originated before a justice of the peace, and was founded on the following note :

" $150. SEDALIA, February 24, 1870.

On or before the 10th day of June, 1870, for value received, I, the subscriber, of Mt. Sterling Township, County of Pettis, State of Missouri, promise to pay S. R. Squier or order, one hundred and fifty dollars without discount or defalcation, and with interest at 10 per cent. from date, at Sedalia, Mo., P. O."

DAVID EWART.

A judgment was rendered against the defendant by the justice, from which he appealed to the Common Pleas Court.

On the trial in the Common Pleas, evidence was given conducing to show that the defendant's signature to the note was obtained by Squier, the payee, in the following manner: He went to defendant's house late in the evening and proposed to sell his son a patent pump ; he had been there before for that purpose and the defendant had advised his son not to purchase. Squier brought a model of the pump with him and proposed to appoint the defendant's son agent for the sale of

the pumps, and the son agreed to take the agency. The defendant agreed to vouch for his son, and a contract of agency was produced by Squier, by which Squier made the son agent, and the son with the defendant signed the agency contract to account for the proceeds of sales, etc. This was after dark and a lamp was lighted. Squier then produced a printed order with necessary blanks for the defendant to sign and keep as the form of an order for pumps to be sent to the agent. The defendant read over this form and signed and retained it. Squier then rose to his feet and seemed in a great hurry to start, and drew out what he said was a copy of the order and that the defendant must sign it to send off at once to New York for the pump—that he would take it right into town with him and mail it that night. He said the papers were just the same. They looked just alike. He hurried up defendant, had his own pen and ink with him, and defendant signed the paper as and for an order for a pump. Defendant in his evidence stated he never signed the paper as a note but as an order. That he never delivered any paper to Squier as a note, and the only papers he intended to make were the agency contract and the order for a pump. That Squier took his paper off with him as an order for a pump.

On the part of the plaintiff it was in evidence that he purchased the note from Squier for $125, without any knowledge or notice of the alleged fraud in obtaining the signature of the defendant. That Squier sold it to him a short time after its date and before maturity.

This suit was brought by plaintiff as assignee of the note.

The defendant asked the court to declare the law to be, that "although the court should find from the evidence that the defendant did write his name on or to the paper herein sued upon, yet if the court further finds from the evidence that the signature of defendant was obtained thereto without the fault or negligence of defendant, on the fraudulent representations of the payee that the paper to which it was put was a mere duplicate of the order read in evidence, and that the defendant neither knew it was a note, nor intended to sign a note,

but supposed it was such a duplicate, and that the plaintiff did not pay therefor a full and valuable consideration, then the court will find the issues for the defendant."

Other instructions not covering the point raised by this one, were given and refused, and some were given for plaintiff, in conflict with this instruction. The verdict and judgment were for plaintiff. The instruction above set forth raises the only point necessary for us to consider.

It may be assumed as an axiom too well settled to be disputed, that no one can be made a party to a contract without his own consent. Although his signature may be put to the writing, and may have been written by himself, yet if he did not know what he was signing, but acted honestly under the belief that he was signing some other paper and not the one he really signed, he ought not to be bound by such signature. In the execution of instruments of writing, such as contracts, deeds, etc., the mind must act intelligently, and the instrument must not only be signed but delivered by the party, as, and for what he intended it for.

Commercial paper is no exception to this rule, only that in some cases a party knowingly putting his name to such paper, may, by his own negligence, be estopped from disputing its execution as against an innocent holder for value.

For instance, if a person knowingly signs a negotiable note and it is stolen from him and gets into the hands of an innocent holder before maturity, he must suffer the consequence of his own negligence. In such case he knows that he has signed a note, and that it only needs delivery to constitute a valid instrument. So when it is delivered, no matter by whom, to an innocent holder, he is estopped by his own negligence from denying that he authorized its circulation. It was his own folly to sign the note and leave it in existence. But if a party is compelled by duress to sign a note, or is insane when he signs it, or signs a blank paper for no purpose at all, and leaves it on his table, and a note be written over it and put into circulation without his knowledge, I know no principle of commercial or other law that will compel him to pay it, wheth-

er in the hands of an innocent holder or not. The point is that the mind must act in the execution of the paper. It must be executed as and for the paper it purports to be. If the mind is drawn away from it by fraud or otherwise, and the party is induced to sign it as and for another instrument different from what it purports to be, then there is no consent given and no delivery made or authorized to be made of the paper so signed. If such paper purports to be a negotiable note it is void as to the payee and all other holders, whether innocent purchasers or not.

Parties dealing in commercial paper must ascertain whether it was knowingly signed or authorized to be signed by the payer, and this is the only inquiry an innocent purchaser is bound to make.

If the evidence given on behalf of the defendant be true, his name was obtained to the note without his consent. He did not know that it was a note, but believed it to be a mere order for a pump, and signed and delivered it as such and not as a note.

I have not been able to find any direct authority in conflict with these views. In the case of Clark vs. Johnson, 54 Ills., 296, the court held that a party executing a note for a plowing machine was bound to pay it to an innocent holder, although he intended to add a condition to the note after it was written and signed, and before he could do so the payee snatched it from him, and sold it to an innocent purchaser. This seems to be carrying the doctrine beyond its proper limits. The case does not appear to have been well considered. No authorities are cited either by the counsel or by the court, except the case of Shipley vs. Carroll, *et al.*, 45 Ills., 285, where the maker was held liable on a stolen note in the hands of an innocent purchaser. In the case of Shipley vs. Carroll, it was intimated that if the execution of the note had been obtained by fraud it would have been void under their statute, which allows the maker of a note to set up fraud and circumvention in the execution of a note as a defense. This statute, in my judgment, is only declaratory of the common law. What

greater fraud could have been practiced than to induce a party to draw a note, and before its delivery, and before a condition was added to make it complete, to snatch it and run away with it? But that was not a parallel case with the one at bar. In Nance vs. Lary, 5 Alabama, 370, the court held that where one writes his name on a blank piece of paper, of which another takes possession, without authority, and writes a promissory note above the signature, which he negotiates to a third person who is ignorant of the circumstances, the former is not liable as the maker of the note.

In Foster vs. Mackinnon, 4 Law Reports (English Common Pleas), 704, which is very much in point and seems to have been well considered, the court held that where a defendant was induced to put his name upon the back of a bill of exchange, by the fraudulent representation of the acceptor that he was signing a guarantee, he was not liable as an indorser at the suit of a *bona fide* holder for value.

The Supreme Court of New York, in the case of Whitney vs. Snyder, 2 Lansing, 477, (a case directly in point) held that in an action on a negotiable promissory note, brought by a purchaser thereof before maturity, in good faith and for a valuable consideration, against the maker, the latter may prove as a defense that when he signed it, it was represented to him and he believed it to be a contract entirely different in character. The court distinguished his case from a note fraudulently obtained and which the maker intended to make.

In Gibbs vs. Linabury, 22 Mich., 479, a case precisely in point—except that was a hay-fork and this a pump, the court held that when the defendant unwittingly signs an instrument in the form of a negotiable note, relying upon false representations made to him at the time that the instrument he is signing is the mere duplicate of a contract just previously signed by him, making him an agent for the sale of a patent hay-fork, under circumstances devoid of any negligence on his part, and when fraudulent means are taken to prevent him from noticing the body of such pretended duplicate, and he delivers the same in ignorance of its true character, believing it to be the mere

duplicate contract which he supposed he had signed, such instrument is to be regarded as a forgery, and cannot be enforced even in the hands of a *bona fide* purchaser.

These cases were all well considered and lay the rule down as it should be in regard to the execution of commercial paper, without in the least impugning the well settled doctrine that no inquiry can be allowed as to the consideration of such paper, as between the maker and an innocent indorser for value.

I think, both upon reason and authority, the instruction under review ought to have been given and those in conflict with it refused.

Let the judgment be reversed and the cause remanded. The other judges concur.