————o————

A. M. CHRISTIAN *et al.*, Respondents, *vs.* JNO. B. NEWBERRY, Appellant.

1. *Execution sale, costs of—Payment of by plaintiff in execution—Title.*—The payment of costs of an execution sale by plaintiff in the execution or his attorney, is not sufficient to constitute him a *bona fide* purchaser.

2. *Note secured by deed of trust.—Renewal of note held by assignee—Effect of on security.*—The renewal of a note secured by a deed of trust does not destroy or in any way impair the security. And the assignee of the original note holds the security, in case he receives a renewal of the note.

3. *Mortgage—Taking of new one—Merger.*—In the absence of a special agreement to that effect, the taking of a new security from the same party and on the same property, will not merge or extinguish a prior one of the same quality and degree.

4. *Notes and bills—Note received as renewal in anticipation of subsequent purchase of original note.*—One note may be considered as a renewal of another, so as to retain a lien secured thereby, where the junior note is given to and accepted by the payee as a renewal, in anticipation of a purchase by him of the senior note, and such purchase is accordingly affected.

5. *Original note the occasion for renewal—How far debt represented by notes the same.*—It is not sufficient to make the debt represented by an original and renewal note the same, so that the latter note shall hold the security given for the former, that the original note should be simply the occasion of the maker having to give the renewal.

*Appeal from Bates Circuit Court.*

*Page & Holcomb,* for Appellant.

A note given by a debtor for a pre-existing debt is no payment, unless the creditor expressly agrees to take it as payment, and to run the risk of its being paid. "Nothing is

considered as an actual payment which is not in truth such."
(McDonald vs. Hulse, 16 Mo., 503 ; See also, Hil. Mortg.,
4th ed., p. 476.)

*Waldo P. Johnson,* for Respondents.

There is in this case but one point, and that is, was the
note given by Clary to French paid off and discharged by
that given to Cowles? It was so found by the court, and that
finding is abundantly sustained by the evidence.

HOUGH, Judge, delivered the opinion of the court.

This was a petition for an injunction to restrain the defend-
ant from selling, as trustee, certain real estate which he had
advertised for sale, in pursuance of the provisions of a trust
deed, which, as was alleged, had been satisfied and extin-
guished by payment of the debt for which it was a security.
A temporary injunction was granted, which was afterwards
made perpetual by final decree, and defendant has appealed
to this court.

On the 16th day of September, 1870, Zachariah Clary exe-
cuted a trust deed for certain lands in Bates county, Mo., to
secure the payment of a note for $448, dated September 10th,
1870, and payable to the order of John R. French, one year
after date. This deed was recorded on the 10th of October,
1870, but was incorrectly copied, the recorder having omitted
to transcribe the signatures of Clary and wife. The same
deed was correctly recorded on the 25th of March, 1872.

The plaintiffs claim title to the land described in said trust
deed, through an execution sale made on the 5th day of March,
1872, under a judgment rendered in the Bates circuit court
against said Clary on the 13th day of September, 1871.

On the 27th day of September, 1871, Zachariah Clary exe-
cuted another trust deed for the same land to secure the pay-
ment of a note for $525, bearing date on said 27th day of
September, and payable in ninety days from its date to the
order of M. S. Cowles, who, it appears from the testimony,
was at that date cashier of the Bates county Savings Bank.

This second deed and the note secured by it were made by Clary for the purpose of taking up the note to French, and the indebtedness created thereby was really an indebtedness to the bank, though the note was made payable to Cowles.

Clary testified as follows: "I borrowed the money at the Savings Bank in Butler, Bates county, Mo., to the amount, I think, of $500, and gave said Savings Bank my note, as near as I can remember, for the sum of $500, which I secured by deed of trust on the east half of the southeast quarter of section 8, in township 38, range 30, in the county of Bates, State of Missouri, for the purpose of redeeming my note held by John R. French for $448, which I applied to the purpose stated above, as follows: I left the money ($500) as before stated, prior to the 10th of September, 1871, at said Savings Bank, to liquidate my note held by said J. R. French. I instructed the said bankers to inform said French and A. C. Widdicombe (who was trustee), that the money was there subject to their order. French, (as Mr. Wilson of the bank told me), came and received the money, signing the notes, (as Mr. Wilson told me) over to said bankers. I have never received the note into my possession. The reason I did not receive the note was, the said bankers refused to deliver said note to me on account of doubts then existing as to the deed of trust, then on record, being good."

M. S. Cowles testified for the defendant. The note to French for $448 having been shown to him, he said: "When I first saw this note, it belonged to Mr. John R. French, in September or October, 1871. I then bought it of him. We furnished the money, and bought of Mr. French, in person, this note, secured by deed of trust." The second note having been shown to witness, he said: "This note was given to me personally by Mr. Clary. We loaned Clary the money on this note, so that he could pay off the note and deed of trust, and also for additional expenses. The first note was signed over to us by Mr. French. There was no conversation with Clary about the defect in the deed of trust. I supposed that it was correct. We learned of the defect first after Swift

purchased at sheriff's sale. Clary was to pay off the notes to us. We held them by purchase from French. This note (the second) was written at the date therein mentioned. Also deed of trust dated same day was executed on that day; money, I don't think, was given to him then; French lived on the river; we furnished the money when Mr. French came, which was a few days after the note and deed of trust were written. I do not know when we commenced to make this discount; our books will show. We discounted notes of this kind at $1\frac{1}{2}$ per cent. per month at that time. The discount on note (second) was $23.60. This note was given to pay the first note, interest and expenses. When we get this note and interest paid by Clary, we will have no other claim on first note. The payment of second note liquidates the whole thing. I think the note was discounted October 6, 1871; the note was assigned to the bank October 6, 1871, by Mr. French in my presence. My impression is that Clary was present when French assigned the note. I think the money was paid October 6, 1871. We lifted the first note the same day the other was given; they both happened on same day. The reason that we held both notes was because the first note was given for purchase money. I do not know that this fact appeared upon the note or deed of trust."

J. E. Wilson testified: " Mr. Clary wanted us to take up the note held by Mr. French. French had advertised the land, and Clary wanted to execute to us his note. Mr. French afterwards came in and agreed to sign the note without recourse. When the first conversation was held the note and deed of trust was dated, which was September 27, 1871, but was not signed till French came, which was October 6th. I think that Clary was not present when French assigned the note. We were to hold the first note."

Cross-examination—"The note and deed of trust were both signed at same time, October 6th; I didn't know when notary signed it. I suppose if the $525 note was liquidated, it would pay off all claims which we hold against Clary."

Jas. M. Borcing testified as follows; "I resided in Butler, September and October, 1871. I was book keeper in Bates County Savings Bank, and notary. The bank promised to let Mr. Clary have the money. French came down and waited a few days, and as Clary did not come, French assigned the note to us (second note shown). When this note was given it .was for money to pay off first note. After the note had been assigned Clary came up, but did not demand the note in my presence or to my knowledge. The officers of the bank claimed both as security. The draft was delivered to French in person. Clary was not present on the 6th of October, 1871. I don't remember when second note was given; I think that deed of trust and note were signed on day therein stated; I think they were executed September 27, 1871. Mr. Clary had no other money there except' the proceeds of note. The note and deed of trust never left the bank. The second note was discounted to pay the first note."

Cross-examined—"I am certain the note and deed of trust were executed on September 27, 1871, the day they bear date, as I never date papers backward nor forward."

This witness took the acknowledgment of the trust deed made to secure Clary's note to Cowles.

Swift, who purchased the land at execution sale and conveyed it to the plaintiffs, examined the record of conveyances before purchasing, and read the record in which the signatures of Clary and wife were omitted, and the testimony tends to show that the plaintiff (Christian) had actual notice of the defective record. Neither Swift nor the plaintiffs, who are his grantees, have paid any portion of the sum bid at the execution sale, though Christian has paid the costs. Christian was attorney for the plaintiff in the execution. The payment of costs by the plaintiff in execution or by his attorney, is not sufficient to constitute him a *bona fide* purchaser. (Hart et al. vs. Farmers and Merchants' Bank, 33 Vt., 252.) It is unnecessary, therefore, to say anything as to the effect of the defective record as notice.

The real question in this case is, whether the trust deed made to secure the French note has been satisfied and extinguished. or, to state it differently, whether the debt secured by said trust deed has been paid.

The trust deed being a security for the debt, must, unless in some way separately extinguished, stand until the debt is discharged. A renewal of the note, which is merely the evidence of the debt and not the debt itself, does not destroy or in any way impair the security. While the debt remains unpaid the lien of the trust deed continues. (Lippold vs. Held, 58 Mo., 213.) As the assignment of a note secured by mortgage or deed of trust carries with it to the assignee the right in equity to the mortgage lien, a renewal of the note to the assignee would not differ in effect from a renewal to the mortgagee or original payee before assignment. And it has been held that the case is essentially the same if instead of assigning the note first, the new note be taken and delivered to the intended assignee of the debt. (Burdett vs. Clay, 8 B. Mon., 287.) Nor, in the absence of an express agreement to that effect, would the taking of a new security from the same party and upon the same property merge or extinguish a prior one of the same quality and degree. (Hill vs. Bube, 3 Kernan, 556.)

In view of the foregoing well established principles the only material inquiry is, whether the debt represented by the note to Cowles is the same debt for which Clary gave his note to French. This could only be so on the hypothesis that the bank was at the time the owner of the French note, and that the note to Cowles was executed in renewal of that note, or because the bank had agreed with Clary for the purchase of the note to French and its renewal in advance.

It is not sufficient to make the debt the same, that the note to French should have been the occasion, simply, of his having to give the note to Cowles.

We find nothing in the testimony which countenances the idea that Clary gave his note for $525, and that Cowles or the bank accepted the same as a renewal of the French note

in anticipation of a purchase by the bank of that note. The question then remains, did the bank own the French note at that time? The note and trust deed to Cowles bear date September 27, 1871, and Boreing, the notary, who took the acknowledgment, and Cowles, the cashier, who received them, both testify that this was the true date of their execution.

It seems quite certain that the bank did not pay any money to French, either in the purchase or payment of Clary's note to him, until October 6th, 1871. Cowles fixes the date of the discount of Clary's note on the same day, but the weight of evidence establishes the fact that Clary was not present at the bank on that day. There is but little room to doubt that credit was given to Clary on the 27th day of September, 1871, the day on which he executed and delivered his note and trust deed to the bank, though no money was actually furnished to Clary and none was paid to French on account of his note, until the 6th of October. On whose account was this payment made? Did the bank expend its own money in the purchase of the French note, or did it take up that note for Clary with the proceeds of his note to Cowles?

Boreing, the book keeper, testified that Clary had no other money in the bank except the proceeds of this note. Cowles testified that when the note for $525 should be paid the bank would have no further claim on Clary, and there is no evidence that Clary ever drew from the bank the proceeds of this note. Cowles and Clary testified that this note was made in order to pay the first note, interest and cost. Boreing said that this note was given for money to pay off the first note. Cowles said, we loaned Clary the money on this note so that he could pay off the note and trust deed, and also for additional expenses; that no money was given to Clary when he made the note; that it was not furnished until French came, which, we have seen, was on October 6th.

It thus plainly appears that at the time Clary negotiated the loan with the bank it was not the owner or holder, or even in possession of the note to French, and Clary constituted the bank his agent to take up the French note; and it

was authorized to use the proceeds of his note to Cowles for that purpose, and we think it did so.

This note was payable to the order of French, and the ordinary custom of bankers was doubtless observed and French required to indorse it. Had the note to Cowles been made in renewal of the note to French, no money would have been placed to Clary's credit in the bank, and yet, from the bookkeeper's testimony, this seems to have been done.

Again, after Clary had borrowed the requisite sum from .the bank to pay off his note to French and left the same with the bank as his agent to make the payment and take up his note, the bank could not, without Clary's consent, purchase the note from French, and treat the note made by Clary for the benefit of the bank as a renewal note.

The judgment of the circuit court is affirmed. All the other judges concur.