[No. 1704.]
## HOBKIRK v. WALRICH ET AL.

1. CHATTEL MORTGAGE—EFFECT OF NEW MORTGAGE.
Where a debt is secured by a chattel mortgage the taking of a new note and new chattel mortgage to secure it, does not of itself and necessarily extinguish the old debt or the first chattel mortgage.

2. SAME.
Where a chattel mortgage being about to become due the mortgagor executed new notes and a new chattel mortgage on same property without any release or agreement to release the old mortgage, but the attorney for the mortgagees delivered the old mortgage to the mortgagor and before the new mortgage was placed on record an execution was levied upon the property, whereupon the old chattel mortgage was returned by the mortgagor to the mortgagees, *held,* that the first chattel mortgage was not released and that the mortgagees were entitled to possession of the property as against the sheriff under the execution.

*Appeal from the District Court of Rio Grande County.*

Mr. JESSE STEVENSON, for appellant.

Mr. IRA J. BLOOMFIELD, of counsel.

Mr. CHARLES M. CORLETT, for appellees.

BISSELL, P. J.

The conflicting claims of different creditors and their attempts to enforce collection of their debts has given rise to an unusual and somewhat peculiar litigation. In 1896, one Bloom was the owner of a newspaper in Del Norte, called

"The Daily Enquirer," and of its plant. He was indebted to the State Bank and to Walrich, the appellees, in about the sum of $364. To secure payment of the debt he gave a mortgage on the printing plant which was duly recorded. The note which represented the debt matured on the 23d day of November, 1896. At this time he was also indebted to one Wallace living in Monte Vista, and had given Wallace a judgment note which had either matured on the 23d or which Wallace was entitled to declare due and put into suit and judgment. Maben, representing the State Bank, and Walrich went to Del Norte on the 20th to enforce their security but finding it unmatured took no steps concerning it except to inform Bloom that it was their intention to foreclose it on the 23d when it should fall due. On that date Bloom went to Monte Vista to make some arrangement about it. Bloom desired an extension which the other parties were not willing to give save on receipt of further and other security. Negotiations were carried on between the parties all day with reference to the extension and no conclusion was reached until about 4 o'clock in the afternoon. Intermediate to this time Bloom went to Wallace with Walrich and attempted to borrow the money to pay this debt. It is not entirely certain whether Wallace was then told of the mortgage, but he was certainly advised by the record of its existence and it substantially appears that he had been told it was outstanding. The parties did not agree in regard to the additional security, though Bloom ultimately turned over to Walrich and Maben some claims which he had against several counties for printing and received $75.00 thereon under an agreement that when these claims should be collected the $75.00 should be repaid and the balance applied on the debt if any of it remained. This advance was not made until several days after the 23d so that it in reality cuts no figure in the disposition of the question raised on this record. About 4 o'clock in the afternoon of the 23d the parties came to an understanding and Bloom agreed to give another mortgage and other notes for the principal and interest of his debt to mature on the

10th of January following and to be secured on the same property. It is out of the circumstances attending the execution of this security and the giving up of the old, that the rights of the parties spring. The testimony shows no agreement whatever between Walrich and Maben and Bloom to surrender the old mortgage or the notes; there was nothing apparently said about it. Both Walrich and Maben testified they had no intention to surrender the old security or to release it in anywise, and this is not denied by Bloom, who only says concerning it, that he signed the mortgage and acknowledged it, and that Corlett surrendered the old mortgage and notes. Both Maben and Walrich testified directly that there was nothing said about giving up the old notes or the old mortgage and there never was any release of the security or any agreement to release it. Corlett, who drafted the instrument and acted professionally for Walrich and the bank, testified that Bloom asked him if it would be right for him to take the old mortgage, and he replied he supposed it would, and Bloom thereupon took it. This is all there was about it. While these negotiations were being carried on, Wallace, who held the judgment note, either went or sent an attorney to Del Norte and entered suit in the county court, took judgment, issued an execution on the afternoon of the same day, and put it in the hands of the sheriff who seized the property about 6 or 7 o'clock in the evening. Bloom denies any connection with the transaction. Wallace may have caught on to the situation and attempted to secure an advantage over the mortgage creditors by taking judgment on his note and making a levy. Knowledge of Wallace's judgment came to Maben and Walrich who thereupon left Monte Vista and went to Del Norte, reaching there about 9 or 10 o'clock. They went to Bloom and insisted it was agreed the security should be unimpaired; that he had permitted the holder of the note to get an apparent advantage and the old mortgage and notes should be redelivered. Bloom made no objection and gave up the mortgage, although the notes he said had been destroyed. The parties then got a key to the office, went down and took

possession under the old chattel mortgage.   This was prior
to its maturity and while the record was unimpaired.   The
new mortgage had not been put on record, there had been no
release of the old one and it was then in full force and vigor.
While these parties were in possession the sheriff came and
insisted on his levy.   He ejected them and this suit was
brought.

Manifestly, the only question in the case is, did what tran-
spired in the giving of the new mortgage and the security
operate to release and discharge the old one, relieve the
property of the lien, let in the levy of the execution as a prior
claim and Walrich and the State Bank thereby lose their
claim and debt?   According to the weight and volume of
the opinions on this question we must hold the old mortgage
was not discharged, was in force as a valid security, and there-
under and by it Walrich and the State Bank had a right to
seize the goods and they had a good title as against the levy
of this execution issued on the judgment which Wallace had
obtained.   The evidence as we have already shown clearly
discloses the intention on the part of Walrich and the State
Bank to hold their security on this identical property.   They
had no intention to release it, nor did they imagine they had
released it, nor did they themselves in any wise surrender
the old note and the old mortgage.   We must concede, of
course, what the attorney did who represented them bound
them if he had authority to act which he probably did, but
we do not believe as a matter of law that the attorney's act,
permitting Bloom to take the old note and the mortgage,
amounted either technically or legally to a surrender.   The
appellants cite us to a case in Michigan which seems to hold
that the surrender of the notes and the security is an impor-
tant circumstance tending to show an intention on the part
of the parties to surrender the old security.   Possibly, if the
evidence had not been so clear to the point that this was not
its purpose but the parties intended to hold the property
subject to the payment of this identical debt, we might con-
cur with the Michigan court.   We do not believe the facts

justify it. Especially, in view of the consideration, that the court found all the issues in favor of the plaintiffs and if this finding or conclusion was essential to the judgment we should be controlled by it, or at least we should be entitled to accept it.

We have grave doubts whether this principle is of necessity controlling. So far as we are able to see the case of *Brereton v. Bennett*, 15 Colo. 254, in no manner conflicts with our opinion. All that case holds is, that where on the maturity of a mortgage the mortgagee took another and put it on record and intermediate to the expiration of the old one and the record of the new, a third was recorded by an innocent party, the holder of the first and third security would be concluded and subordinated to the other, where for upwards of thirty days he permitted the other security to remain and took no steps for the foreclosure of his first mortgage. The court seems to place its decision largely on the proposition that the appellant made no effort to reduce the mortgaged property to possession from the 30th of September until the last of November. As the court puts it, "Whatever may have been his rights had he acted promptly, they were forfeited by this delay." This clearly indicates the court must have had in mind the authorities which we shall cite on this question and the principle which they decide. So too the other cases to which the appellant refers us, seem largely, if not entirely, dependent on considerations of this description but if not, they are so fully and wholly overborne by the weight and volume of the cases that we should in any event be bound to disregard them. It seems to have been always the law that the execution of a subsequent security of the same description and character as the former does not by operation of law extinguish the latter. As it was put by Judge Cowen in the 20th Wendell, this has been the course of adjudication for centuries. In that case he puts many illustrations, such as taking a bond and mortgage for sealed notes which does not extinguish the notes, nor does the recovery of a judgment on a judgment satisfy the latter. This case even goes farther

than many cases and approves the earlier authorities which hold an agreement to accept or an acceptance of a second bond in satisfaction of the first is no accord and satisfaction. To accomplish this result there must be an express release, or at least a release implied from a covenant not to sue. It is the general principle that a chose in action never satisfies a debt. The more modern authorities following in the same road all express it in the same general way. The law thereunder is, that where a chattel mortgage has been given to secure a debt, the taking of a new note and a new mortgage does not of itself and necessarily extinguish the debt or the first mortgage. *Gregory v. Thomas*, 20 Wend. 16; *Howard v. National Bank*, 44 Kan. 549; *Packard v. Kingman et al.*, 11 Ia. 219; *Crosby v. Chase*, 17 Me. 369; *Hadlock v. Bulfinch*, 31 Me. 246; *Bodkin v. Merit*, 86 Ind. 560; *Helmetag v. Frank*, 61 Ala. 67; *Christian v. Newberry*, 61 Mo. 446; *Jagger Iron Co. v. Walker*, 76 N. Y. 522; *Flower v. Elwood*, 66 Ill. 438; *Austin v. Bailey et al.*, 64 Vt. 367. Such being the rule, it must follow Walrich and the State Bank lost no claim by the acceptance of the new mortgage and the new notes, but still had the right to insist on the old security, providing they proceeded in apt time and within its life to enforce it, especially as against a party who had knowledge both constructive and actual of the existence of their security. We are not compelled to resort to the application of the doctrine of notice derived from the record of an instrument, nor to consider what would be or might have been the rights of the parties had there been an apparent release or an agreement between the parties to satisfy or release, or no attempt to foreclose until after the maturity of the original security and the levy of the execution before the record of the new mortgage. The record shows none of these facts. There was no release, nor was there an agreement to release, nor was there an intention to abandon the security. The old mortgage was on record, it had not expired, it was in force at the time the parties undertook to take possession. They had the old mortgage in their possession given to them by the

debtor and with this instrument which in the law is an adequate authority for the purpose, they did within its limit and during the last day of its life attempt to take possession of the property. Under these circumstances we are quite unable to see how, in the light of the principle which we have just announced, the judgment creditor could, by obtaining his execution and levying it, obtain a priority over those parties who had a valid unexpired security, under and by virtue of which they were proceeding to take possession as by law they might.

The decision of the court below is in accord with this view and its judgment will therefore be affirmed.

*Affirmed.*