Crim v. Crim.

## CRIM, Appellant, v. CRIM.

In Banc, May 21, 1901.

1. **Note: READING BEFORE EXECUTION.** One who is *sui juris* can not release himself from the payment of a judgment on a note which contained a power of attorney to confess judgment, by a plea that he did not read the note before he signed it and did not know it contained such terms, if he had full opportunity to read it and there was no fraud, misrepresentation, trick or concealment in the procurement of the note.

2. ———: ———: PROVINCE OF EQUITY: PAROL EVIDENCE. In the absence of fraud or mistake, parol evidence is not admissible to contradict or vary a written contract.

3. ———: SUIT ON JUDGMENT: DEFENSES. After a note has been merged into a foreign judgment and suit is brought on that judgment in this State, the defenses that might have been available if properly interposed in the suit on the note are not available here. Fraud in the note constituting the cause of action is not a good defense in a suit on the judgment into which it has been merged. Only fraud exercised in the very act of procuring the judgment is available for an attack on the judgment.

Crim v. Crim.

4. ———: COGNOVIT: FOREIGN JUDGMENT. A judgment without process or actual appearance, on a note containing a cognovit authorizing any attorney at law to appear in any court of the United States, waive process, enter appearance and confess judgment against the maker for the amount due, including interest and costs, and release all errors, is authorized by the laws of Ohio, where the note in this case was made. And being a valid judgment in that State, it is entitled under the Federal Constitution "to full faith and credit" when sued on in this State.

> *Held*, by VALLIANT, J., dissenting, that a judgment may be valid in the State where it is rendered, yet the Federal law does not require the courts of this State to acknowledge its validity, if actual service of process was not had in the court of the other State which rendered judgment, or if defendant did not in reality enter his appearance. And the Missouri courts having no authority to render judgment upon a note without process or appearance, or notice or knowledge, a judgment valid in the State where the note was made, should not be recognized here as binding if the maker of the note did not know at the time that it contained such cognovit.

5. ———: ———: ———: LIMITATIONS. Nor is such judgment affected by the fact that the note was barred by limitation under the laws of Missouri at the time suit was brought thereon in Ohio, if the judgment, which is the basis of the suit in this State, was not so barred.

Appeal from Barton Circuit Court.—*Hon. D. P. Stratton,* Judge.

REVERSED AND REMANDED.

*White & McCammon* for appellant.

(1) The judgment rendered in Ohio was a regular, valid judgment in that State. Lessee v. Thompson, 3 Ohio 272; Huntington v. Finch, 3 Oh. St. 445; Watson v. Paine, 25 Oh. St. 340; Callen v. Ellison, 13 Oh. St. 446; Clements v.

Vol 162 mo—35

Hull, 35 Oh. St. 141. '(a) The courts of Missouri will give the Ohio judgment the same force and effect it would have in Ohio, and as ascertained by the laws of Ohio. 2 Black on Judgments, secs. 860, 861, 868. (b) Judgments by confession, on warrant of attorney as this, are recognized by the courts of this State as valid. Randolph v. Keiler, 21 Mo. 557; Harness v. Admr., 19 Mo. 323. (2)' Did defendant sustain his attack upon the Ohio judgment? Defendant, in his answer, alleges, in endless iteration, that he did not know there was in the note a warrant of attorney to confess judgment, and that plaintiff falsely and fraudulently represented that it was simply a promissory note to show a settlement, and if there was a warrant of attorney to confess judgment in said note it was incorporated therein by plaintiff, falsely and fraudulently, for the purpose of obtaining an advantage over defendant, and was concealed from him "by the false and fraudulent statement that the same was a note and plaintiff wanted it only to show a settlement." But the note not only fails to show any fraud or misrepresentation—it shows the fullest opportunity to read what was signed. The note was the ordinary printed form which had been in common use in that community among business men for many years; the defendant had been in active business there for twenty years, and had given a great many such judgment notes, and all in all, every element of fraud, which has been held necessary in this State to annul a judgment, is lacking in this evidence. Irvine v. Leyh, 102 Mo. 206; s. c., 124 Mo. 364; Payne v. O'Shea, 84 Mo. 132; Murphy v. DeFrance, 101 Mo. 157; McClanahan v. West, 100 Mo. 320; Bigelow on Estoppel (3 Ed.), 162, 163. (3) The defendant can not, under his own evidence, nullify the warrant of attorney contained in the note. Taylor v. Fox, 16 Mo. App. 529. A person who is *sui juris* can not deliberately sign a contract in writing and then, in the absence of evidence creating

any inference of fraud or imposition, be heard to say that such instrument is not his agreement. Campbell v. Van Houten, 44 Mo. App. 238; Rothschild v. Frensdorf, 21 Mo. App. 323; Brown v. Railroad, 18 Mo. App. 568; Robinson v. Jarvis, 25 Mo. App. 421; Patterson v. Railroad, 56 Mo. App. 662; Wyrick v. Railroad, 74 Mo. App. 412; Kellerman v. Railroad, 136 Mo. 188; Gwin v. Waggoner, 98 Mo. 327; Girard v. Car Wheel Co., 46 Mo. App. 106; Palmer v. Continental Ins. Co., 31 Mo. App. 472; Snider v. Express Co., 63 Mo. 376; O'Bryan v. Kinney, 74 Mo. 125; Railroad v. Cleary, 77 Mo. 634; Herndon v. The Triple Alliance, 45 Mo. App. 432; Mateer v. Railroad, 105 Mo. 352; Shanley v. Gaslight·Co., 63 Mo. App. 131; 1 Wharton on Const., sec. 196; School District v. Ins. Co., 61 Mo. App. 599; Mensing v. Ins. Co., 36 Mo. App. 602; Ins. Co. v. Davis, 59 Mo. App. 405; Holloway v. Railroad, 62 Mo. App. 56; Mfg. Co. v. Fd'ry Co., 79 Mo. App. 655.

*Thurman, Wray & Timmonds* for respondent.

(1) The following Missouri cases hold that a judgment, although warranted by the laws of a sister State, where the defendant is not served with process, and who does not in fact enter his appearance, is not "records of judicial proceedings" within the meaning of section I, article 4 of the Federal Constitution. Overstreet v. Shannon, 1 Mo. 375; Sallee v. Hays, 3 Mo. 116; Smith v. Ross, 7 Mo. 464; Gillett v. Camp, 23 Mo. 375; Miles v. Jones, 28 Mo. 87; Foote v. Newell, 29 Mo. 400; Latimer v. Railroad, 43 Mo. 105; Sevier v. Roddie, 51 Mo. 580; Gilbreath v. Bunce, 65 Mo. 349. Outside of the Supreme Court of the United States and the Supreme Court of Missouri the weight of the authority, including text-writers as well as adjudicated cases, is against the validity of such a judg-

ment outside of the territorial limits of the sovereignty where rendered, and not within the meaning of the Federal Constitution and statutes giving to the "records and judicial proceedings" of other States "full faith and credit." We call the attention of the court to the following authorities in support of this last proposition. Cooley's Con. Lim., secs. 495, 496, 508; Story on Conflict of Laws, secs. 539, 540; Black's Const. Law, 233; Wharton on Conf. Law, secs. 656, 660; 2 Freeman on Judg., secs. 562, 563, and n. 1; Thompson v. Whitman, 18 Wall. 457; Weaver v. Boggs, 38 Md. 255; Smith v. Grady, 68 Wis. 215; Bowler v. Huston, 32 Gratt. 266; Underwood v. McVeigh, 23 Gratt. 409; McEwan v. Zimmerman, 38 Mich. 765; Thorner v. Batory, 41 Md. 593; Anderson v. Hadden, 33 Hun, 435. (2) The respondent was certainly entitled to his day in court. The appellant after having sued on the note in the Barton Circuit Court and after having respondent brought into court by summons, withdraws the instrument sued on, takes it back to Ohio, into a county where neither appellant nor respondent ever lived, and undertook to deprive respondent of his day in court by an agreement found in the supposed note, which he, himself, swears was not put in the note or left in the printed form by any agreement with respondent, and says on the contrary that such an agreement was not mentioned at or prior to the time the supposed note was signed. Appellant says that he asked his brother to sign a note, not a confession of judgment. The respondent testifies that he never intended to sign an agreement to confess judgment. There never was any agreement or understanding that he should sign such a paper, so that it is conceded by all of the testimony that respondent signed this supposed note under the impression that it was simply a written evidence of his debt to appellant. He had a right to rely on that fact under the circumstances. Without such an agreement it is clear that the judgment is an absolute nullity.

Crim v. Crim.

Pennoyer v. Neff, 95 U. S. 714; Williams v. Monroe, 125 Mo. 574. (a) The judgment, if rendered in the State of Missouri could not be upheld; conceding that the agreement in the note had been entered into with full knowledge of its force and effect, such course of procedure is against the policy of our law. Burr & Co. v. Mathers & Co., 51 Mo. App. 470. (b) Before a defendant can be deprived of his day in court, his waiver of this important right must appear by clear and cogent testimony. Baner v. Sampson, 102 Ind. 262; Supreme Council v. Garris, 104 Ind. 133; Kesler v. Indianapolis, 88 Ind. 460; Ins. Co. v. Morse, 20 Wall. 445. (3) The respondent's defense to the judgment called in question does not seek to set it aside, but is based on the fact that the judgment is void for want of jurisdiction in the court rendering it over the person of the defendant. There was not only substantial testimony supporting every allegation in respondent's answer but the most material of them was conceded by appellant in his testimony. (4) We do not dispute the general proposition that where a person, *sui juris,* signs a contract without evidence tending to show deception, trick or fraud, he is bound by the contract. But that proposition does not help plaintiff. If the respondent did not know that the warrant of attorney was in the supposed note signed by him, then it is beyond question that a deception was practiced on him. (5) Respondent had a perfect right to rely on the fact that his brother had filled out a note instead of a power of attorney to confess judgment, and if he did not know of the deception, the court properly instructed the jury that he was not bound by the contract. Pomeroy v. Benton, 57 Mo. 531; Cottrill v. Krum, 100 Mo. 397; Caldwell v. Henry, 76 Mo. 254; Wannell v. Kem, 57 Mo. 478; Dickson v. Kempinsky, 96 Mo. 258; Spead v. Hollingsworth, 39 Pac. Rep. 496. When a party to a contract inserts terms not agreed upon and the other party signs it without knowledge of the deception,

relying on the fact that the contract has been drawn as agreed upon, such contract is void.    Wright v. McPike, 70 Mo. 175; Cole Bros. v. Wiedmair, 19 Mo. App. 7; Briggs v. Ewart, 51 Mo. 249; Aultomon v. Olson, 34 Minn. 450; Hutchins v. Pettingell, 58 N. H. 30; Phelps v. Decker, 10 Mass. 278; Stacy v. Ross, 27 Texas 3; VanValkenburg v. Rouk, 12 Johns. 337.

MARSHALL, J.—The following opinion was heretofore rendered in this case by Division One of this court:

"Action upon a foreign judgment for $7,004.    Judgment for defendant.    Plaintiff appeals.

"The parties are brothers, and both formerly lived in Ohio.    The defendant was in debt to the plaintiff, and on the tenth of November, 1881, was about to remove to Missouri. The plaintiff demanded a settlement and the defendant, as he says, because he would have had trouble if he had not done so, gave the plaintiff his note for four thousand dollars, payable at one year, with six per cent interest, in settlement of the debt.    The note contained a cognovit authorizing any attorney at law to appear in any court of the United States, waive process, enter appearance and confess judgment against defendant for the amount due on the note, including interest and costs, and to release all errors.    On the fourteenth of October, 1891, the plaintiff instituted suit against the defendant in the court of common pleas of Stark county, Ohio, upon the note.    Pursuant to the terms of the note, W. J. Piero, an attorney of that court, entered the defendant's appearance, waived process, and confessed judgment for $7,004, the principal and interest due on the note, released all errors and waived all rights of appeal. Thereafter, the plaintiff instituted this suit in the Barton Circuit Court on the foreign judgment.    The answer of the defendant is a general denial, with special pleas: first, that the

Ohio court had no jurisdiction, because defendant was and had been for over ten years a resident of Barton county, Missouri, and was not summoned and did not appear in the Ohio court and never authorized Piero or any one else to appear for him, and that at the time the suit was begun in Ohio the debt was barred by limitation in Missouri; second, that the parties are brothers and the defendant being in debt to the plaintiff was about to remove to Missouri, and plaintiff asked defendant to sign a note for the balance due plaintiff, saying he only wanted a settlement and would never enforce the note against defendant; that defendant did not in fact owe the plaintiff as much as four thousand dollars; that he signed the note understanding that it was only a promissory note, and not knowing that it contained a provision authorizing a confession of judgment, and never having agreed to grant such authority to any one; that the plaintiff falsely and fraudulently represented to him that it was only a promissory note and concealed from him the fact that it contained a cognovit, and that relying on the statements of the plaintiff he signed the note without reading it or examining it.

"The trial developed the facts to be that notes of this character are usually used in Ohio; that the defendant had been largely engaged in dealing in cattle while he lived in Ohio, and had executed many such notes, and that several judgments had been rendered against him there upon similar notes under the cognovit therein contained; that he had procured many loans from the banks upon similar notes, and that the banks would not make loans upon any other kind of paper; that he had given similar notes to other persons before leaving Ohio; that there were no representations made to him about the character of this note when he signed it, and no attempt made to conceal its character from him; that he owed his brother some amount, the brother says five thousand dollars, and he says it was not so

much, and that his brother offered to settle it if he would give him this note for four thousand dollars, and that he did so because, 'I expect I would have had to sign the note or got into trouble.'

"The court refused all the instructions asked by the plaintiff, and on its own motion instructed the jury as follows:

" 'You are instructed that your verdict will be for the plaintiff for the full amount of the judgment sued on, with interest on the same from October 14, 1891, to date, at the rate of six per cent per annum, unless you further believe from the preponderance, or greater weight of the evidence, that the defendant, at the time he signed the note upon which the judgment sued on is based, had no knowledge that the said note contained a power of attorney to confess judgment, and had no intention to sign such a note, in which case your verdict will be for the defendant.'

"The jury found for the defendant, judgment was entered upon the verdict, and after proper steps the plaintiff appealed.

## I.

"There was no fraud, misrepresentation, trick or concealment in the procurement of the note. It may be true the defendant did not read it before he signed it, but he was *sui juris*, had full opportunity to read it, and deliberately signed it. The law presumes he knew its contents, and he can not be permitted now to take advantage of his own fault or negligence. [O'Bryan v. Kinney, 74 Mo. 125; Snider v. Express Co., 63 Mo. 376; Railroad v. Cleary, 77 Mo. 637; Mateer v. Railroad, 105 Mo. 352; Kellerman v. Railroad, 136 Mo. 177; 1 Whart. on Contr., sec. 196.]

"The defendant relies on Wright v. McPike, 70 Mo. 175, approving what was said in Briggs v. Ewart, 51 Mo. 249, as

follows: 'It may be assumed as an axiom that no one can be made a party to a contract without his own consent. Although his signature may be put to the writing, and may have been written by himself, yet, if he did not know what he was signing, but acted honestly under the belief that he was signing some other paper, and not the one he really signed, he ought not to be bound by such signature.' In McPike's case this was quoted, and then it was said: 'Although that case has been overruled, the doctrine announced in the foregoing extract from the opinion was not disturbed by the court in the overruling decision. As between the original parties, if one has procured the signature of the other to a written agreement, whether by fraud or not, which does not contain the contract made by the parties, but a different one, he can not be permitted to avail himself of that contract, but must stand by the one which was in fact entered into by both parties.'

"In Briggs v. Ewart, supra, it was held that such a defense could be made even if the note was held by a bona fide purchaser for value and without notice, before maturity. This case, as was also the case of Corby v. Weddle, 57 Mo. 452, which followed it, was expressly overruled in Shirts v. Overjohn, 60 Mo. l. c. 312.

"The doctrine further announced in McPike's case, that as between the original parties such questions are open to inquiry in a suit at law upon the note, whether the note was made by fraud or not, is no longer the law in this State, as the cases cited above clearly show.

"Courts of equity set aside contracts procured by fraud and reframe contracts where there has been a mutual mistake of the parties. But it is an invariable rule of law that in the absence of fraud or mistake, parol evidence is not admissible to contradict or vary a written contract. The written contract is conclusively presumed to merge all prior negotiations and to

Crim v. Crim.

express the final agreement of the parties. To permit a party when sued on a written contract to admit that he signed it but to deny that it expresses the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts and negotiable instruments. The reason underlying the rule is to give stability to written agreements, and to remove the temptation and possibility of perjury, which would be afforded if parol evidence was admissible.

"But aside from these considerations, this is a suit upon a judgment and not upon the note. The note is merged in the judgment, and the defenses that might have been available if properly interposed in the suit on the note are not open to review here. Even if there was fraud in the note constituting the cause of action, the judgment can not be attacked. Only fraud in the very act of procuring the judgment can be interposed as a defense to the judgment, even in a direct attack, in equity to set aside the judgment. [Hamilton v. McLean, 139 Mo. 678; Bates v. Hamilton, 144 Mo. l. c. 11.]

## II.

"Judgments upon notes containing such a cognovit are valid judgments in Ohio. [Lessee v. Thompson, 3 Ohio, 272; Watson v. Paine, 25 Ohio St. 340; Clements v. Hull, 35 Ohio St. 141.]

"Such judgments are also valid in other States. [Hansen v. Schlesinger (Ill.), 17 N. E. Rep. 718; Roche v. Beldam, 119 Ill. 320; Holden v. Bull (Pa.), 1 Penn. & W. 460; Ely v. Karmany, 23 Pa. St. 314; Stein v. Brunner (La.), 7 So. Rep. 718; Boot & Shoe Co. v. Falk (Wis.), 61 N. W. Rep. 562.]

"The identical question here involved came before this court in Randolph v. Keiler, 21 Mo. 557, where the suit was upon a judgment rendered by the 'inferior court of common

pleas, in and for the county of Sussex, State of New Jersey,' upon a note containing a cognovit in almost the exact terms with the note upon which the Ohio court entered judgment in this case. Practically the same defenses were made there that are made here. But it was held that such judgment was valid in New Jersey, even though neither of the parties were citizens of that State or had ever been in that State, and this being so the judgment was entitled to 'full force and credit' in this State, under section 1 of article 4 of the Constitution of the United States, and hence the New Jersey judgment was enforced here.

"Similar judgments are enforced in other jurisdictions, even though the defendant was a resident of another State than that in which the judgment sought to be enforced was rendered. [Kitchen v. Bellefontaine National Bank (Kan.), 36 Pa. Rep. 344; Ritter v. Hoffman, 35 Kansas, 215; Crafts v. Clark, 38 Iowa, 237; Nicholas v. Farwell, 24 Neb. 180; Snyder v. Critchfield (Neb.), 62 N. W. Rep. 306; Sipes v. Whitney, 30 Ohio St. 69.

"The question whether the note upon which the judgment sued on was barred by limitation in Missouri, is not open to review here. The suit is upon the judgment, and that is not barred by limitation.

"It follows that the trial court erred in giving the instruction quoted, and also that neither the answer nor the evidence shows any defense to the suit. The trial court should have directed a verdict for the plaintiff, and the judgment of that court is reversed and the cause remanded to be proceeded with in accordance herewith."

Upon motion, the cause was transferred to Court in Banc, upon the dissent of VALLIANT, J. The case has again been fully argued and further briefed by counsel.

In addition to what is said in the divisional opinion, it

is proper to say, that the cases of D'Arcy v. Ketchum, 52 U. S. 165, and Pennoyer v. Neff, 95 U. S. 714, are not applicable to the case at bar; the first, because there was no service of any kind upon the partner who lived in Louisiana, and, therefore, the personal judgment of the New York court against him was void; and the second, because the service was by publication—constructive—and, therefore, it would not support a personal judgment, while in the case at bar the defendant was in court by his own voluntary act, when the judgment was rendered against him.

Counsel for defendant, in a supplemental brief, has referred to the following cases as authority for the contention that the decision in this case and that in Randolph v. Keiler, 21 Mo. 557, are not in harmony with the rule and policy in this State: Overstreet v. Shannon, 1 Mo. 529; Sallee v. Hays, 3 Mo. 116; Smith v. Ross, 7 Mo. 464; Gillett v. Camp, 23 Mo. 375; Miles v. Jones, 28 Mo. 87; Foote v. Newell, 29 Mo. 400; Latimer v. U. P. Ry. Co., 43 Mo. 105; Sevier v. Roddie, 51 Mo. 580; and Gilbreath v. Bunce, 65 Mo. 349.

A careful examination of these cases shows, however, that they have no application to the case at bar. Thus, in Overstreet v. Shannon, 1 Mo. 375 (529), it appeared that the defendant had not been served in any manner in the foreign State. In Sallee v. Hays, 3 Mo. 116, the judgment was against the defendants, who were non-residents of the foreign State, without any service whatever, upon a covenant of their ancestor, and the decree charged the assets descended with the debt of the ancestor. It was alleged that such a decree was conclusive upon the parties in Kentucky. This court held that the judgment was not valid here because the defendants had not been brought into court in any manner whatever. In Gillett v. Camp, 23 Mo. 375, and Latimer v. Railroad, 43 Mo. 105, the judgment was based solely upon constructive service, by publi-

cation. In Smith v. Ross, 7 Mo. 464, the action was upon a
foreign judgment against Smith, who was served, and Hani-
man, as to whom the return of process was "not found," the
judgment was held to be void as to Haniman, because he was
never brought into court. In Miles v. Jones, 28 Mo. 87, the
defendant was personally served, but the judgment was at-
tacked, and set aside because it was procured by fraud. In
Foote v. Newell, 29 Mo. 400, it appeared that a judgment was
rendered against the defendant in Indiana (it does not appear
from the statement of facts whether the defendant was in court
or not, but it seems to be assumed that he was, at any rate that
question was not involved in the case) and that the sheriff had
levied upon the property and that by virtue of a statute of that
State the defendant replevied the property levied on and ob-
tained a stay of execution according to the law of that State,
by giving a bond to pay the judgment. The statute provided:
"And such bond, from the date of its execution, shall be taken
as, and have the force and effect of, a judgment confessed in a
court of record against the person or persons executing the
same and against their estates, and execution may issue therein
accordingly." The judgment was not paid and the bond was
sued on in this State as a judgment of the State of Indiana.
It was held that such a bond had "no affinity" to a judgment,
and was not such a judgment as is contemplated by the act of
Congress. All of which is undoubtedly right, for such a bond
is no more a judgment than is any contract or power of attor-
ney authorizing a confession of a judgment. It is the act of
the parties and is not the judgment of a court. In Sevier v.
Roddie, 51 Mo. 580, the action was upon a Tennessee judg-
ment. It appeared that a third person had obtained a judg-
ment against the defendant as principal and the plaintiffs as
his sureties. The sureties paid the judgment, and under the
laws of Tennessee obtained a summary judgment, without

notice, against the principal, and the suit was upon this judg-
ment.    It was properly held that the judgment was not such a
judgment as the act of Congress contemplated, because the de-
fendant not being in court, the proceeding was void.    In Gil-
breath v. Bunce, 65 Mo. 349, it appeared that under the laws
of Arkansas, the plaintiff, a minor, had been relieved of the
disability of infancy "so far as to authorize him to demand,
sue for and receive all moneys belonging to him in the State of
Missouri, in the hands of his curator," etc.    Thereupon he
sued the defendant, the curator of his estate in Missouri, upon
his bond as such curator, to recover the estate in his hands.
It was held that the minor could not maintain the suit, as
under the laws of Missouri a minor can only appear by guar-
dian, and that the Legislature of Arkansas could not pass a law
which would have the effect of giving a non-resident minor of
this State a different status in the courts of this State from that
of a resident minor in this State, when seeking the aid of the
courts of this State.    This decision is right, but it is not per-
ceived how it applies to the case at bar, nor how the act of
Congress has any bearing on it, for the action was not for the
enforcement of a judgment of a foreign State, but was simply
an attempt to make the minor of age when he came into the
Missouri courts, contrary to the laws of this State.    It did not
remove his disabilities absolutely, or at all in Arkansas, but
only "so far as to authorize him to demand, sue for and re-
cover all moneys belonging to him in the State of Missouri, in
the hands of his curator," etc.    This was simply a bungling
attempt by the lawmakers of Arkansas to control judicial pro-
ceedings in Missouri, and is without precedent in law that we
are aware of.

The defendant strenuously contends that the case of
Grover and Baker Sewing Machine Co. v. Radcliffe, 137 U. S.
287, is "on all fours" with the case at bar.    In that case it

appeared that: "B, a citizen of Maryland, having executed a bond, containing a warrant authorizing any attorney of any court of record in the State of New York, or any other State, to confess judgment for the penalty, and judgment having been entered against him in Pennsylvania by a prothonotary, without service of process, or appearance in person or by attorney, under a local law permitting that to be done, Held: (1) that in a suit upon this judgment in Maryland, the courts of Maryland were not bound to hold the judgment as obligatory either on the ground of comity or of duty, contrary to the laws and policy of their own State; (2) B could not properly be presumptively held to knowledge and acceptance of particular laws of Pennsylvania or of all the States other than his own, allowing that to be done which was not authorized by the terms of the instrument he had executed." It was pointed out that a judgment of a sister State was required to be observed in another State only when, (1) the defendant was served with process, or voluntarily entered his appearance, "or that he had in some manner authorized the proceeding," (2) that an instrument authorizing a confession of judgment must be strictly followed, and its terms could not be enlarged by reading into it the laws of another State, of which he is not charged with knowledge, and hence, if the power to confess judgment was conferred upon any attorney of any court of record, its terms could not be enlarged so as to authorize a prothonotary to confess judgment, even if the laws of the State where the judgment was rendered expressly permitted a prothonotary to act whenever any attorney was authorized to do so.

This case is "on all fours" with the case at bar, and is ample support for the decision herein, so far as it holds that where the defendant has "authorized the proceeding," he is bound by the judgment, and the courts of other States must give force and effect to the judgment of the sister State, when-

ever the authority has been strictly pursued, as is the case here, but it is unlike the case at bar in this, in that case the authority for the proceeding, conferred by the act of the defendant, was not strictly pursued, while here it was done. That judgment was held void in a sister State because a prothonotary does not come within the class of "attorneys of courts of record," and the act of such prothonotary was not, therefore, authorized by the defendant, and the law of the State could not enlarge the authority granted by the defendant. That decision is also valuable as showing plainly the principle upon which D'Arcy v. Ketchum, and Pennoyer v. Neff, supra, both of which are referred to in that case, rested, to-wit, that in neither case had the defendant been served with process or voluntarily appeared or in any manner authorized the proceeding. It also accentuates the proposition that if the judgment is rendered against a party who is in court in any one of the three ways specified, it is valid not only in the State where it is rendered, but, under the act of Congress, in all sister States.

We subscribe and adhere to all the cases cited and herein reviewed, but the rules there announced are not contravened by anything that is decided in the case at bar. On the contrary, those were all cases where the party sought to be charged had not been brought into court by personal service, and had not voluntarily entered his appearance and had not authorized the proceeding against him, while in the case at bar the defendant had expressly authorized the exact proceeding that was had against him in Ohio.

For these reasons the opinion heretofore rendered in Division One is adopted as the opinion of the Court in Banc, and the judgment of the circuit court is reversed and the cause remanded to be proceeded with in accordance herewith. *Burgess, C. J.,* and *Sherwood, Brace,* and *Gantt, JJ.,* concur; *Valliant* and *Robinson, JJ.,* dissent.

VALLIANT, J. (*dissenting*).—The Constitution of the United States ordains that "full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State." But that clause of the Constitution as interpreted by the Supreme Court of the United States does not mean that all judgments in other States must be given the same effect which they may have by law in the State where rendered. It is absolutely essential in order to give to a judgment *in personam* effect outside of the State in which it was rendered that the court which rendered it should have had jurisdiction of the person of the defendant.

In D'Arcy v. Ketchum, 52 U. S. (11 How.) 165, a judgment rendered in New York was sued on in Louisiana; a statute of New York provided that where joint debtors were sued and process was served on one, judgment, if plaintiff prevailed, might go against all, and the New York courts had held such judgments valid; in that case a partner in a New York firm lived in New Orleans; the firm was sued in New York and the partner there served with process and judgment was rendered against both. When the New Orleans man was sued on the judgment in Louisiana the trial court held that the judgment, being valid in New York, where rendered, full faith and credit must be given to it everywhere, and rendered judgment accordingly. But the Supreme Court of the United States reversed the judgment. The theory, I presume, on which the New York statute proceeded was that it extended the implied agreement which exists among partners to make each the agent for all in firm matters to making each the agent for all to accept service of a writ. A statutory provision of that kind might be obligatory in the State of its enactment, and a court might on such service render a judgment against a non-resident that would be valid in the State were rendered, but

Vol 162 mo—36

if so it would have no extra-territorial effect.

A statute of Oregon was to the effect that if personal service of process could not be had on a man, and he had property within the State, publication might be had and on that notice the court could proceed to hear and render a judgment against him, the statute not requiring first the seizure by attachment of the property.

In considering a case under that statute the Supreme Court of the United States, said: "Attempts have been made to enforce such judgments in States other than those in which they were rendered, under the provision of the Constitution requiring that 'full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State;' and the act of Congress providing the mode of authenticating such acts. . . . . In the earlier cases it was supposed that the act gave to all judgments the same effect in other States which they had by law in the State where rendered. But this view was afterwards qualified so as to make the act applicable only when the court rendering the judgment had jurisdiction of the parties and of the subject-matter, and not to preclude an inquiry into the jurisdiction of the court in which the judgment was rendered, or the right of the State itself to exercise authority over the person or the subject-matter."

Further down in the same opinion it is said:

"To prevent any misapplication of the views expressed in this opinion, it is proper to observe that we do not mean to assert, by anything we have said, that a State may not authorize proceedings to determine the status of one of its own citizens towards a non-resident, which would be binding within the State, though made without service of process or personal notice to the non-resident. The jurisdiction which every State possesses to determine the civil status and capacities of all its

inhabitants involves authority to prescribe the conditions on which proceedings affecting them may be commenced and carried on within its territory." [Pennoyer v. Neff, 95 U. S. 714, L. C. 729, 734.]

Thus it is demonstrated by the highest expounder of the Constitution of the United States that a judgment may be valid in the State where it is rendered yet not required by the Federal law to be accorded full faith and credit by another State. If the court in the sister State did not have actual service of process, or if the defendant did not in reality enter his appearance, the United States Constitution does not force us to recognize a judgment rendered on constructive service or on a fictitious entry of appearance.

The question in the case at bar is, did the court in Ohio have jurisdiction of the person of the defendant when it rendered judgment against him? He was at the time a resident of Missouri, and was not in Ohio while the suit was pending. But some years before when he was in Ohio, he executed the note sued on and included in it what purported to be an authorization to any attorney at law to appear in any court in the United States, waive process, enter appearance and confess judgment on the note against him. Under that authorization some one, said to be an attorney at law, did essay to enter the defendant's appearance, waive process and confess judgment. That character of proceeding is said to be valid in Ohio, and I will assume that it is, and that the judgment is valid in that State. Suppose there had been no such authorization in the note and an attorney at law without any authority from defendant whatever, had entered his appearance and suffered the judgment to go. That would be a valid judgment in the State where rendered, to the extent at least, that it could not be avoided collaterally. But the decisions above cited are authority for saying that if that judgment should be sued on here,

the defendant may void it by a plea showing that the court had no jurisdiction of his person. Now the supposed case differs from the case at bar only in this, that in that case there was no semblance of authority to the pragmatical attorney, while here there is claimed to be authority. But if what is here claimed as authority is no authority, then there is no difference between the cases.

That so-called authorization would certainly not be recognized as valid under the laws of this State, not because we do not recognize the right of a man to appoint an attorney in the regular way to enter his appearance in a suit in court, even for the purpose of suffering judgment to go against him, but because it is against the policy of our law to permit a man when entering into an obligation, to bargain away his right to be heard in court, should a question ever arise between him and his adversary in relation to it. A man who has signed a paper of that kind, if it is valid, is completely at the mercy of the holder, whatever the merits of the case may be; because the holder may go to any forum in the United States and select any attorney whom he chooses and have judgment entered against the maker, who does not know that he is being sued. And this judgment creditor comes to the State in which the judgment debtor resides and asks the courts of such State to say that "full faith and credit" must be given to the judgment of that sister State.

But it is said that as this contract was good in the State where it was made, it is therefore valid everywhere. That is not a rule of universal application. In the case last cited the Supreme Court of the United States said: "The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from all others. And so it is laid down by jurists, as an elementary principle, that the laws of one State have no operation outside of its ter-

ritory, except so far as is allowed by comity." That comity never admits the validity of an act done in another State by authority of the law there if it contravenes the policy of the law here. In Missouri a man's right to be heard in court is inalienable and a contract like the one in question is not only not authorized, but contrary to our policy. The pretended appearance that is entered under such authority is not real but fictitious, we are not forced to recognize it, and would do violence to our judicial policy if we did so.

In an early case, Randolph v. Keiler, 21 Mo. 557, this court seems to have felt constrained to give "full faith and credit" to a judgment rendered in New Jersey on such an obligation. But the court was, even then, divided, Judge SCOTT rendering a dissenting opinion. The Constitution of the United States, however, in this particular, has had much enlightened interpretation since then and as said by the United States Supreme Court in the Pennoyer case, above cited, the earlier decisions have been qualified.

For these reasons I am of the opinion that the judgment of the circuit court was for the right party and should be affirmed. *Robinson, J.,* concurs in the foregoing views.