WRIGHT, *Administrator*, v. McPIKE, *Administrator, et al.*, *Appellants*.

1. Contract: WRITTEN INSTRUMENT: SIGNATURE WITHOUT CONSENT. As between original parties, if one has procured the signature of the other to a written instrument, whether by fraud or not, which does not contain the contract made by the parties, but a different one, he cannot be permitted to avail himself of the writing, but must stand by the real contract.

2. **Verdict.** The Supreme Court will not disturb the finding of a jury on a question of fact.

3. **Instructions.** If the prevailing party was entitled to his verdict without proof of fraud on the other side, the fact that one of the instructions submitted the question of fraud to the jury without any proof of fraud being given, will furnish no ground for setting aside the verdict.

4. **No Estoppel.** Where a creditor, at the time of accepting a note from his debtor denies the truth of a recital contained in it, and this is known both to the debtor and to a surety on the note, neither will be allowed, in an action on the note, to invoke the recital by way of estoppel.

*Appeal from Audrain Circuit Court.*—HON. G. PORTER, Judge.

AFFIRMED.

*Henry Flanagan* and *Fagg & Biggs* for appellants.

·I. No fraud in the procurement of the title bond is alleged in the reply, and there is no evidence to sustain such allegation, if made, and hence the first and fourth instructions given for plaintiff are erroneous. *Moffatt v. Conklin,* 35 Mo. 453. The law will not presume fraud. 1 Greenl. Ev., § 80. 2. The plaintiff is estopped by his conduct in accepting the note, after he was informed of its contents, and by accepting B. F. McPike as security on it, two years after he first received it, from denying its recitals. This latter act was a new contract. *Shirts v. Overjohn,* 60 Mo. 305; *Fitzpatrick v. School Comms.,* 7 Humph. 224; *Garrett v. Gonter,* 42 Pa. St. 143

*Elijah Robinson* and *Ed. T. Smith* for respondent.

1. The execution of the title bond was denied by plaintiff in his reply verified by his affidavit, and the issue thus made was fairly submitted to the jury; the jury found for the plaintiff, and the trial court refused to set aside the verdict; and this court will not enquire as to the weight of the evidence. *Schulenberg v. Boothe,* 65 Mo. 475; *Rey-*

*nolds v. Rogers*, 63 Mo. 17; *Daviess Co. Sav. Assn. v. Sailor*, 63 Mo. 24; *Boynton v. Miller*, 63 Mo. 207; *Lottman v. Barnett*, 62 Mo. 159; *McHugh v. Meyer*, 61 Mo. 334; *Beattie v. Hill*, 60 Mo. 72; *Schuster v. K. C., S. J. & C. B. R. R. Co.*, 60 Mo. 290. If plaintiff signed the title bond (by making his mark,) believing it to be a different paper from what it really was, and McPike accepted the title bond knowing this fact, then plaintiff was not bound by the title bond. *Martin v. Smylee*, 55 Mo. 577; *Briggs v. Ewart*, 51 Mo. 245. 2. The plaintiff was not estopped by the recital in the note sued on. The evidence clearly shows that he was induced to accept the note (containing the recital) by fraudulent statements of McPike, the defendant, as to the effect of the recital. Having accepted the note under a misapprehension as to the meaning and effect of the recital, he could not be bound by it. *Taylor v. Zepp*, 14 Mo. 482; *Terrill v. Boulware*, 24 Mo. 254, and this is especially true when the misapprehension was caused by fraudulent statements of the defendant himself. *Holden v. Putnam Fire Ins Co.*, 46 N. Y. 1.

HENRY, J.—This was a suit instituted by plaintiff's intestate on a note executed by Abraham McPike, principal, and B. H. McPike, surety. The note was, by the answer, alleged to have been given for the price of a tract of land sold by Jas. H. Wright, plaintiff's intestate, to Abraham McPike; and the defense relied upon was, that said Wright executed a title bond by which he obligated himself to make to McPike a good and sufficient deed for the land on payment of the purchase money, and that he had no title to the land, and refused to execute any other than a quit-claim deed. The replication denied the allegations in the answer, averring that the consideration for the note was an assignment by said Wright to said McPike of two judgments in his favor, one against Yeager and the other against one Doak, and an agreement to convey to McPike his right and title to said land. As to the alleged bond

12

he pleaded *non est factum*, and specially that he was illiterate, could neither read nor write, and that all instruments of writing which he, at that or any other time, executed in connection with said land, or trade between him and McPike, were represented to him by McPike to be only assignments of said judgments, and as necessary to enable him to obtain whatever might be realized on them.

· Evidence was introduced, against defendant's objection, tending to establish the fact that the bond in question was not what Wright supposed he was signing, and that it was misrepresented to him. The court, for plaintiff gave the following instructions relative to that issue :

1. Although the jury may believe from the evidence in the cause that the plaintiff did sign (by making his mark) the title bond read in evidence in this cause, and that by the terms of said bond the plaintiff was to convey to said A. McPike the real estate mentioned in said title bond by a good and sufficient warranty deed, yet if they believe from the evidence in the case that plaintiff was an illiterate man, not being able to read or write, and that he signed said bond not knowing the contents thereof, and without any fault or negligence on his part, and that said plaintiff, if he had been aware of the contents of said title bond, would not have signed the same; and that said A. McPike took said title bond from plaintiff knowing that plaintiff was not aware of the contents thereof, and if he had he would not have executed the same, then said title bond is void and of no effect, and the jury should find for the plaintiff.

4. Although the jury may believe from the evidence that plaintiff signed (by making his mark) the title bond read in evidence, yet if the jury further believe from the evidence that there then existed between plaintiff and said McPike confidential relations, and that McPike had been acting as the agent of plaintiff in the collection of the debt against Yeager and Doak, and that McPike procured and induced said plaintiff to sign said title bond by mak-

ing false and fraudulent representations to plaintiff, or by purposely deceiving him as to the character or effect of said instrument he was signing, and that plaintiff would not have signed said title bond if he had known the character and effect of the same, and that that fact was known to McPike, then said title bond constitutes no defense to this suit, and the jury will find for the plaintiff.

The defendant excepted to the giving of said instructions. Other instructions were given for both parties, with respect to the failure of plaintiff's intestate to tender to McPike a general warranty deed to the land, and the inability of said intestate to make a good title; but in the view taken by the court, it is unnecessary to notice them.

Defendant's counsel contends that inasmuch as no fraud in procuring the bond was alleged in the reply, the above instructions should have been refused. It was said by Judge Adams in *Briggs v. Ewart* 51 Mo. 249, that: "It may be assumed as an axiom that no can be made a party to a contract without his own consent. Although his signature may be put to the writing, and may have been written by himself; yet, if he did not know what he was signing, but acted honestly under the belief that he was signing some other paper, and not the one he really signed, he ought not to be bound by such signature." Although that case has been overruled, the doctrine announced in the foregoing extract from the opinion was not disturbed by the court in the overruling decision. As between the original parties, if one has precured the signature of the other to a written agreement, whether by fraud or not, which does not contain the contract made by the parties, but a different one, he cannot be permitted to avail himself of that contract, but must stand by the one which was in fact entered into by both parties. In *Van Valkenburgh v. Rouk*, 12 John. 337; Spencer, J., said: "Chitty lays it down that the defendant, on *non est factum*, may give in evidence that the deed was void *ab initio* : as that it was obtained by

*1. CONTRACT: written instrument: signature without consent.*

fraud, &c.   The fraud he refers to must have been a fraud relating to the execution of the deed, for the issue involves only the execution of the instrument.   In the case of an infant, he must plead infancy, and cannot give it in evidence on *non est factum*, because the deed is his; though he is not bound by it.   A *femme covert*, having no capacity to contract, is not bound to plead coverture.   If a deed be mis-read or mis-construed to an unlettered man, this may be shown on *non est factum*, because he has never assented to the contract.   So, if a man be imposed upon and signs one paper while he believes he is signing another, he cannot be said to have assented, and may show this on *non est factum.*"   In that opinion the doctrine on this subject is very clearly and succinctly stated.   *Phelps v. Decker,* 10 Mass. 278, and *Stacy v. Ross,* 27 Texas 3, are to the same effect.

It is contended that there was no evidence which warranted instructions numbers one and four.   We think there 2. VERDICT.      was evidence tending to show, not only confidential relations between them in regard to the whole transaction under consideration, but that when Wright signed the bond in question he was not aware of its purport, and that it was mis-read or mis-construed to him. The jury so found, and as we cannot disturb that finding, the other questions discussed in the briefs of counsel need not be considered; because, if the agreement was as alleged in the replication, and not as contained in the bond, then it is immaterial whether Wright had a good title to the land or not, or whether the deficiency in the amount of the land was considerable or inconsiderable.

The fourth instruction could not have prejudiced the defendant.   It asserted plaintiff's right to avoid the bond 3. INSTRUCTIONS.   if his signature to it was procured by the fraud of A. McPike.   It required plaintiff to show more than was necessary, for the jury, as we have seen, had been properly instructed that he was not bound by the bond if he signed it not knowing its contents, and McPike took

Wright v. McPike.

it knowing that plaintiff had so signed it. If properly instructed that they might find for plaintiff without proving fraud, an instruction submitting the question of fraud to the jury is not one of which defendants can complain.

Defendants insist that "by accepting the note, after he was informed of its contents, and by accepting B. F. Mc-

4 NO ESTOPPEL. Pike as security on it, two years after he first received it, Wright was estopped from denying its recitals." The note reads as follows: "One day after date I promise to pay to Jno. F. Wright, or order, the sum of $2,327, for the purchase of the Yeager farm, which I gave a title bond to said A. McPike to make a deed, this note bearing ten per cent.," &c. B. F. McPike was a witness for the defense, and his own testimony shows that before and at the time he signed the note, he was aware of a controversy or misunderstanding between A. McPike and Wright in relation to that bond and the contract between them; and the testimony of Jas. H. Wright shows that his father, Jno. F. Wright, objected to that recital in the note, and that A. McPike told him to take the note as it was; that he, McPike, was in a hurry to get to New London that morning, and that he would be at Bowling Green at the probate court, and would then either pay off the note or give a new one with B. F. McPike and another brother as security; that on this assurance Wright accepted the note. In these facts there are none of the elements of an estoppel. Besides, the recital in the note does not indicate the character of the deed Wright was to execute. The recital could not operate as an estoppel between Wright and A. McPike, because the latter virtually admitted its incorrectness and promised to rectify the error when Wright objected to it, nor as between B. F. McPike and Wright, because B. F. McPike, when he signed the note, knew there was a misunderstanding between A. McPike and Wright concerning the bond, and is, therefore, bound by the real contract between the parties. All concurring, the judgment is affirmed.