THOS. A. JOHNSTON, Respondent, v. COVENANT MUTUAL LIFE INSURANCE COMPANY, Appellant.

**Kansas City Court of Appeals, April. 7, 1902.**

1. **Fraud: SIGNING CONTRACT: READING: EVIDENCE.** When one without fraud practiced upon him signs a contract he is conclusively presumed to know and accept its contents and terms, and his failure to read before signing does not alter the rule; and on the evidence plaintiff is held carelessly to have signed his name under circumstances failing to show fraud of which the law can take no cognizance. SMITH, P. J., *dissenting*, in a separate opinion holds the facts to disclose fraud in procuring the signature.

2. ———: ———: **FALSE REPRESENTATIONS.** False representations that a contract embodies the verbal understanding of the parties, is not the fraud for which a contract may be set aside. SMITH, P. J., *dissenting*, holds that the evidence discloses sufficient fraud to send the question to the trier of facts.

Appeal from Cooper Circuit Court.—*Hon. Jas. E. Hazell,* Judge.

REVERSED AND REMANDED *(with directions).*

*E. W. Hinton* for appellant.

(1) In the absence of fraud, the written contract specifically providing for the thirty per cent advance dividends as an advance against the policy until extinguished by actual earnings or was otherwise paid, swallows up and supersedes all previous parol negotiations on the subject. Kellerman v. Railroad, 136 Mo. 188; State ex rel. v. Hoshaw, 98 Mo. 358; Ins. Co. v. Nieberger, 74 Mo. 167. (2) Mere ignorance on

the plaintiff's part as to the contents of the instruments signed by him furnishes no ground for avoiding them. School District v. Ins. Co., 61 Mo. App. 601; Penn v. Brashear, 65 Mo. App. 27; Campbell v. Van Houten, 44 Mo. App. 231. (3) If the plaintiff had taken the trouble to read the advance dividend certificate signed by him, it is clear that he could not now be heard to complain of false representations on that subject, because in that event he would have known the real state of facts. Sachleben v. Heintze, 117 Mo. 520; Nicol v. Young, 68 Mo. App. 455; Beck v. Obert, 54 Mo. App. 247; Ordway v. Ins. Co., 35 Mo. App. 426. (4) But the plaintiff's ignorance of the contents of the advance-dividend certificate, resulting from his failure to read it, is equally unavailing, since it is neither alleged nor proved that he was prevented from reading by any trick or fraud. Kellerman v. Railroad, 136 Mo. loc. cit. 188, 189; Och v. Railroad, 130 Mo. 44; Mateer v. Railroad, 105 Mo. 320; Nicol v. Young, 68 Mo. App. 448; Penn v. Brashear, 65 Mo. App. 27; Shanley v. Gas Co., 63 Mo. App. 131; Van Ravenswaay v. Ins. Co., 89 Mo. App. 73. (5) Neither the representations made by the agent as to the nature of the advance dividends, nor any statement that he may have made as to the contents, sufficiency or effect of the application or advance-dividend certificate can amount to such a trick or fraud as will avail in this case, because the plaintiff had both the opportunity to read and the ability to understand such certificate. Davis v. Ins. Co., 81 Mo. App. 265; Nicol v. Young, 68 Mo. App. 448; McMaster v. Ins. Co., 99 Fed. (C. C. A.) 856.

*J. W. Jamison* for respondent.

(1) The court found that the written application that plaintiff signed does not set forth all the provisions the policy was to contain. There is substantial evidence to support the special finding of facts by the court. These findings are there-

fore conclusive. McClanahan v. Payne & Campbell, 86 Mo. App. 284; Furniture and Carpet Co. v. Davis, 86 Mo. App. 296; Ins. Co. v. Neiberger, 74 Mo. 173; Van Ravenswaay v. Ins. Co., 89 Mo. App. 73; 1 Joyce on Insurance, sec. 58; Stephens v. Ins. Co., 54 N. W. 139. (2) Under plaintiff's contract he was to be given an advance dividend of thirty per cent of the regular premium. The policy tendered requires in express terms, a payment, yearly in advance, of the full premium. (3) "When it is once established that there has been any fraudulent misrepresentations or willful concealment by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him he might have known the truth by proper inquiry. Upton v. Englehart, 3 Dillon 501; Mackay v. Ins. Co., 58 Pac. 1112; 1 Joyce on Ins., sec. 505. (4) The fraud alleged by plaintiff stands confessed. The agents charged with its commission remained silent and failed to go upon the witness stand. It is virtually admitted by defendant's president. Admitting the fraud, defendant in effect stands upon the proposition that plaintiff is not entitled to recover, because, forsooth, he was negligent in not discovering that its agents were smooth rascals instead of honest men.

SMITH, P. J.—This is an action which was brought to recover back the first annual premium paid by plaintiff on a five-thousand-dollar policy in the defendant company on the ground of fraud. The material allegations, shortly stated, were as follows:

(1) That defendant's agents represented that it would give plaintiff, as one of a limited number to be insured, a special contract whereby plaintiff's premium would be thirty per cent less than the usual and regular rate charged by defendant and other reliable companies. (2) That the discount to be thus given plaintiff would amount, annually, to $182.40 and would be an absolute saving to plaintiff of that

sum. (3) That at the regular rate the annual premium on the policy offered plaintiff would be $456, but that under the special contract it should be but $287.28. (4) That the *written application* prepared by said agents for plaintiff's signature, called for a policy of this kind. (5) That *all* of said representations were *false* and made with the intent to deceive and defraud plaintiff. (6) That plaintiff was wholly ignorant of matters pertaining to insurance and insurance contracts, and relied exclusively on the representations of said agents. That he also relied upon them to prepare a proper application for a policy of the kind promised. (7) That said agents fraudulently *omitted* from the written application those provisions which it was agreed the policy should contain. (8) That the written application did *not* state the kind or character of policy that plaintiff was to have. (9) That plaintiff paid in advance $287.28, which was to be in full for the first year's premium. (10) That the policy thereafter offered by defendant contained none of the provisions for which plaintiff had contracted but required that plaintiff should pay, annually in advance, the full premium of $456. (11) There was the further allegation that plaintiff was to receive a further rebate of ten per cent of premium, after the first year, the same being known as the agent's renewal commission.

The answer was a general denial. There was a trial which resulted in judgment for plaintiff and the defendant appealed.

The application for the policy was supplemented by what was termed an advance-dividend certificate, which was an acknowledgment by the plaintiff that defendant had advanced him $136.80, being part premiums on the policy applied for, which amount, with any additional advances stated in the renewal receipt, and indorsed thereon, and with interest added annually at five per cent, should be a lien on said policy until extinguished by the surplus apportioned thereto. If we read to-

gether, as we may, the written application and the advance-dividend certificate as being each a part of the same transaction, and as constituting the entire application, wherein was set forth the provisions that the policy to be issued was to contain, then it seems to us that the provisions of the policy issued were in substantial conformity therewith.

There can be no doubt that it is true, as the defendant contends, that in the absence of fraud the written contract specifically providing for the thirty per cent advance dividends should be a lien on the policy until extinguished by the actual earnings, or otherwise paid, would swallow up and supersede all previous parol negotiations touching the same, and that if plaintiff has any standing in the case it must be on the ground of fraud practiced by defendant's soliciting agent. But it contends further that under the application, its agent was without authority to bind it by any promises or agreements not incorporated in such application. We would be willing to concede to defendant this contention in a case where the application is not impeached or brushed aside on the ground of fraud, but if it be procured by fraud, as was found by the court in the present case, then we do not think the defendant's contention can be upheld.

The authority of a soliciting agent of an insurance company to take applications for insurance, carries with it the legal implication of authority to fill up the application and do all things needful respecting it. And where an insurance agent is clothed with authority to represent them in all matters in procuring applications, he is then agent in all that legally concerns them. Joyce on Insurance, sec. 425; Combs v. Ins. Co., 43 Mo. 148. If the plaintiff and defendant's agent made a parol agreement by which several certain provisions were to be inserted in the policy to be issued and the agent in writing the application for such policy inserted therein some of such provisions and omitted others therefrom, we must think that the latter was as binding as the former

because the application, if procured by fraud, was not the contract of plaintiff, and the stipulation thereof to the effect that no promise or agreement made by the agent and not inserted therein was not to bind the defendant, could not be invoked by defendant to show a want of authority in its agent to enter into such prior parol negotiations with plaintiff; or, in other words, when the application was overdrawn, the stipulation fell with it, and was consequently out of the case.

The trial court specially found that the application and advance-dividend certificate were procured by fraud and deceit, and therefore if there is any substantial evidence to sustain such finding it will be conclusive on us.    The plaintiff testified in substance that the defendant's agent represented that it would issue to him (plaintiff) a special contract of insurance by which the premium thereon would be thirty per cent less than the usual rate charged in other reliable companies; that the discount thus given would amount annually to $182.40 and would be a saving to plaintiff in that sum; and that at the regular rate the annual premium would be $456, but under the special contract it would be but $287.28.    The defendant objected that since it appeared from the face of the petition that the plaintiff had signed the application, such testimony tending to prove certain parol negotiations leading up to and prior to the execution of such application could not be received.    This objection was overruled, to which ruling the defendant excepted.    The defendant introduced in evidence the advance-dividend certificate and then moved the court to strike from the record the testimony as parol negotiations leading up to the execution of the application and the written contract for advance dividends for the reason that all previous negotiations were merged in such written contract.    This objection was likewise overruled and to which ruling the defendant excepted.

The plaintiff further testified that at the conclusion of the negotiations between the defendant's agent and himself

for the policy, that the latter wrote out the application and handed it to him to sign, representing that it was for a policy containing the provisions which had been agreed on, and that the defendant, relying upon such representation as being true, signed the same without reading it. The defendant's agent, in the same connection, handed the plaintiff the advance-dividend certificate to sign representing that it was but a receipt; and that plaintiff, relying upon such representation as being true, also signed it without reading. The plaintiff is a scholar and the head of a school of learning which has been famous in this State for more than half a century, and, therefore, he is conclusively presumed not to be an illiterate person.

It is a rule, everywhere recognized, that parol evidence can not be received to alter or vary or contradict a written contract. Koehring v. Muemminghoff, 61 Mo. 403. To this rule, however, there are many exceptions, one of which is that where one of the parties can read and does not read the contract before signing, but relies for his knowledge of its contents and nature upon the reading of the other party, and in consequence thereof, he is deceived and defrauded, he will be entitled to relief because it is not just that one who has perpetrated a fraud should be permitted to say to the defrauded party, when he demands relief, that he ought not to have trusted or believed him. Nicol v. Young, 68 Mo. 448, and authorities there cited; Wells v. Adams, 88 Mo. App. 215. And so it has been ruled that fraud on the execution of an instrument has always been admitted in a court of law where it has been misread or where some other fraud or imposition has been practiced upon the party in procuring his signature to the instrument. Och v. Railroad, 130 Mo. 27, and cases there referred to. And we do not discover that a case like the present where a party writes the instrument and then informs the other party of its nature and contents, is to be distinguished in principle from that where a party relies for his

knowledge of the contents of such instrument upon the reading of the other party.

The defendant's agent represented to the plaintiff that one of the instruments which he had written was an application for a policy containing certain provisions, which were wholly omitted therefrom, and that the other was but a receipt, when it was not only a receipt but an agreement that the defendant should have a lien on any surplus that should be apportioned to such policy for the amount of all premiums advanced by it. This constitutes, as we think, a fraud and deceit within the meaning of the rules just adverted to. The defendant must be held to have procured the signature of the plaintiff to the application and advance-dividend certificate by fraud and deceit which did not contain the contract made by him but a different one, and it can not therefore be permitted to avail itself of that contract, but must stand by that which it in fact entered into. Ins. Co. v. Owens, 81 Mo. App. 201; Cole Bros. v. Wiedmair, 19 Mo. App. 10; Wright v. McPike, 70 Mo. 175.

It seems clear to us that plaintiff having introduced evidence tending to prove that his signature to said instruments was procured by fraud, that it was then competent to prove the prior negotiations and agreements which were in fact entered into. And as the application and advance-dividend certificate constituted the application in its entirety, the allegation of the petition was quite sufficient to authorize the reception of evidence tending to prove that the plaintiff's signature was procured by fraud, or, if not, there was no objection of that kind interposed to its admission in the trial court. It thus appears that there was sufficient competent evidence introduced at the trial of the case to justify the finding of the court.

It is our conclusion that upon the undisputed evidence, the plaintiff was entitled to go behind the written application and advance-dividend contract, and reject the policy because it

did not embody the provisions covered by his prior parol agreement with defendant's agent. We have not been able to find any fault with the trial court's finding of fact or conclusion of law, and so we affirm the judgment.

The foregoing opinion was written as that of the court, but on consultation my associates declined to concur in the conclusions therein reached. I have examined the opinion of the majority but find nothing in it to influence a change of the convictions expressed in that written by me, and to which I adhere.

### SEPARATE OPINION.

ELLISON, J.—Plaintiff's petition and the evidence he gave in his own behalf show that in verbal negotiations for a policy of life insurance defendant's agent represented that he should have a policy on his life for $5,000, with a discount on the regular premium of thirty per cent, and also ten per cent discount on the renewal commission of defendant's agent; the total being forty per cent discount on regular premiums, and that these discounts were not to be charged as a lien on the policy and deducted from the amount thereof when the policy should come to be paid, and that he should give his note for the first premium.

Plaintiff, in stating the matter as a witness, said that the agent called this discount an advance of dividends. Plaintiff gave his version of this preliminary conversation and understanding between him and defendant's agent; and then of the final signing of the application for the policy, his note for the first premium and the advance-dividend receipt, he stated as follows: "And with that understanding he sat down at my writing desk and drew up the application, and drew up the note for the amount of the cash part of the premium, and I sat down to the desk and he laid the papers before me, one at a time, and stated what they were, and I signed them,

simply glancing at them to get an idea of their general nature. First, the policy—I mean the application—and then the note, and then he slipped another paper to me which he said was the receipt for the advance dividend, and I signed that as a receipt. He represented to me at that time that my application was for a policy containing the provisions that I had contracted for. That was certainly implied in everything that he said. I don't know that he actually in words said: 'This application is for such a policy as we have agreed upon,' but of course it was understood that such was the case, because I gave him no direction to draw up any other kind."

The most that can be made of the foregoing is that plaintiff had a verbal negotiation and understanding that he was to have a written contract embodying such understanding. That thereupon the defendant (through its agent) immediately wrote out the three papers (the application, the note and the receipt) which were to contain the contract, and that he deliberately signed them without reading—simply glancing at them—and delivered them to defendant. The evidence shows that he was a man of high order of intelligence, in the full possession of all his faculties. There is not the slightest showing of any fraud in procuring the execution of the papers further than that it was the understanding that they contained the contract that he and defendant's agent had verbally agreed upon. There was no substitution of papers or other juggling therewith. They were made up from blanks in plain bold type. The principal difference between the contract as plaintiff understood it was to be, and as actually reduced and signed, consisted in making the thirty per cent discount of premium or advance-dividend, a lien on the policy and to be deducted therefrom on final payment; when, as plaintiff testified, such discount, or advance-dividend, was not to be a lien on the policy and was not to be subtracted therefrom on settlement. Yet he signed the following paper, printed in bold

type, expressing exactly the contrary, in terse plain language, which no one could misunderstand, viz.:

Policy No. 20925.

### CERTIFICATE OF ADVANCE DIVIDENDS.

:::::::::::::::::::::::
:: 4c Revenue ::
:: stamp. ::
:: ::
:: C. M. L. I. Co. ::
:: Mar. 30, 1899. ::
:: ::
:::::::::::::::::::::::

$———— I hereby acknowledge that THE COVENANT MUTUAL LIFE IN-SURANCE COMPANY OF ST. LOUIS, MISSOURI, has advanced me $136.80 being part premiums on Policy No. 20925, which amount, with any additional advances stated on the re-newal receipt and indorsed hereon, and with interest added annu-ally at five per cent, shall be a lien on said policy until extin-guished by the surplus apportioned thereto, or is otherwise paid to the company.

March 22, 1899.                    T. A. JOHNSTON.

The entire trouble comes from the fact that plaintiff care-lessly signed the papers without reading them. And the ques-tion is, in such circumstances will a person be permitted to dispute the writing and say that something else was the con-tract than what is there expressed. This question could not be answered in plaintiff's favor without disastrous results to a rule of law which, perhaps, has been more universally up-held than any other. For if the contract can be attacked merely on the ground that it does not express what was ver-bally understood, then it serves no purpose except where the parties agree; and not then, for, when they agree on what the terms of a contract were, it can serve no purpose, since, in that case, it is not needed. The law, therefore, may be stated to be, that when, without fraud practiced upon him, a person signs a contract, he is conclusively presumed to know its con-tents and to accept the terms thereof; and the fact that he did not read it does not alter the rule. Railroad v. Clearly, 77 Mo. 634; O'Bryan v. Kinney, 74 Mo. 125; Mateer v. Rail-road, 105 Mo. 320, 350; Och v. Railroad, 130 Mo. 44; Kel-lerman v. Railroad, 136 Mo. 188, 189; Crim v. Crim, 162

Mo. 544. In the latter case (overruling Wright v. McPike, 70 Mo. 175) Judge MARSHALL said: "The written contract is conclusively presumed to merge all prior negotiations and to express the final agreement of the parties. To permit a party when sued upon a written contract, to admit that he signed it, but to deny that it expressed the agreement he made, or to allow him to admit that he signed it, but did not read it or know its stipulations, would absolutely destroy the value of all contracts and negotiable instruments."

If a party is induced to sign a contract by fraud, he can avoid it for that reason. But it is clear that merely falsely representing to a man in possession of his faculties and able to read, that a writing embodies their verbal understanding is not the fraud the law means. If it was, then no written contract could stand against the assault of either party. He would only need to say that it did not contain the agreement; and not containing the agreement, it is fraudulent; and being fraudulent, it can not be enforced. Thus a writing would be mere waste material and all stability of contract be at an end. When no relation of trust and confidence exists, the false representation of the opposite party as to the contents of the paper is not a fraud in law, when the party to whom the representations are made can read and has the opportunity to do so. 2 Story's Eq., sec. 199; Hawkins v. Hawkins, 50 Cal. 558. "The common law affords to every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information." 2 Kent's Com., 485. A man will not be relieved for "voluntarily neglecting to use common sense and judgment if he has them." Robinson v. Glass, 94 Ind. 211. "The law regards the golden rule as being of a too severe and elevated character for practical application to the business affairs of men." Cahn v. Reid, 18 Mo. App. 127, 128.

Plaintiff unquestionably failed to make out a case, and the judgment should be reversed and the cause remanded with directions to render judgment for the defendant. *Broaddus, J.,* concurs; *Smith, P. J.,* dissents.