WOODARD, Respondent, v. COONEY, Appellant.

St. Louis Court of Appeals, February 21, 1905.

1. **APPELLATE PRACTICE: Verdict: Weight of Evidence.** When a verdict is supported by substantial evidence or when the evidence is conflicting, the appellate courts will not interfere with the action of the trial court in overruling a motion for new trial on the ground that the verdict is against the weight of evidence.

2. **WEIGHT OF EVIDENCE: Jury Sole Judge.** The jury is the sole judge of the credibility of witnesses and the weight to be given their testimony.

Appeal from Knox Circuit Court.—*Hon. E. R. McKee,*
Judge.

AFFIRMED.

*F. H. McCullough* and *G. R. Balthrope* for appellant.

In a long unbroken line of decisions in both the Supreme Court and appellate courts of this State it has been held and ruled that it is not only the prerogative, but it is the peculiar and special duty of trial courts to grant new trials when the verdict is arbitrary and manifestly wrong, or when the verdict appears to be the result of passion, prejudice, or misconduct. Friedman v. Pub. Co., 102 Mo. App. 695, 77 S. W. 340; Chouquette v. Railway, 152 Mo. 266, 53 S. W. 897; Bank v. Armstrong, 92 Mo. 265, 4 S. W. 720; Walton v. Railroad, 49 Mo. App. 620; Spohn v. Railroad, 87 Mo. 74; State v. Young, 119 Mo. 495, 24 S. W. 1038. (2) And whilst appellate courts will defer to trial court's actions in granting or refusing new trials where substantial justice has been done, yet if a new trial has been refused where the facts and evidence show the verdict of the

jury is not responsive to the demands of justice, but is tainted with bias and prejudice—they will overrule the judgment of the trial court and either dismiss the cause or grant a new trial. Baker v. Stonebraker, 36 Mo. 345; Price v. Evans, 49 Mo. 396; Whiteset v. Ransom, 79 Mo. 258; Garett v. Greenwell, 92 Mo. 120, 4 S. W. 441; State v. Packwood, 26 Mo. 340; State v. Burdgurf, 53 Mo. 65; State v. Mansfield, 41 Mo. 470; State v. Danbert, 42 Mo. 238; State v. Brosins, 39 Mo. 534; State v. Jaeger, 66 Mo. 173; State v. Castor, 93 Mo. 242, 5 S. W. 906; State v. Primm, 98 Mo. 372, 11 S. W. 732.    (3)    In this case the burden of proof was on plaintiff, and his testimony on the witness stand, being absolutely unsupported by any other witness who testified in the cause, or any circumstance or facts connected with the issues tried and his testimony being flatly contradicted as to all the questions in issue by the testimony of defendant and two reputable disinterested witnesses and all the attending facts and circumstances attending the trial, the verdict of the jury in the face of these facts and the instructions of the court we think clearly indicates that the jury was governed by bias and prejudice, and the trial court should have granted a new trial and this case unmistakably falls under the rules laid down in the following cases: Lionberger v. Pohlman, 16 Mo. App. 392; Borgraefe v. Knights of Honor, 22 Mo. App. 148; Light Co. v. Ins. Co., 33 Mo. App. 361; Price v. Lederer, 33 Mo. App. 437; State to use v. Bick, 36 Mo. App. 114; Martin v. Grabinsky, 38 Mo. App. 362.

*C. D. Stewart* for respondent.

The fact that there was substantial evidence upon which the jury could base its verdict, warranted the trial court in refusing the new trial and under the great bulk of authorities in this State preclude the appellate court from interfering.    James v. Ins. Co., 148 Mo. 15, 49 S. W. 978; Cohn v. Kansas City, 108 Mo. 387, 18 S.

W. 973.   Under the above rule it certainly cannot be contended by any one that there was not substantial evidence to support the verdict in this case and the appellate court should not disturb the verdict.   Albert v. Seiler, 31 Mo. App. 255; Coudy v. Railroad, 13 Mo. App. 588; McFarland v. Ins. Co., 124 Mo. 204, 27 S. W. 436.

STATEMENT.

The plaintiff's petition alleged, in substance, that plaintiff owned a farm of one hundred and sixty acres in Knox county, Missouri, describing it; that the defendant is a real estate agent in Edina, in said county, engaged in selling land for other people for commission; that plaintiff employed defendant to sell said land for him at twenty-five dollars per acre at an agreed and stipulated price of fifty dollars, as commission, for his services for selling said land, and that defendant undertook to and did sell the land for plaintiff to one Sheehy for $26.50 per acre; that plaintiff paid defendant the fifty . dollars commission as full compensation therefor, and says that defendant, acting as his agent, sold said land to said Sheehy for the sum of $26.50 per acre, when defendant falsely and fraudulently, with the intent to defraud plaintiff out of two hundred and forty dollars, falsely reported to plaintiff that he had sold said land to Sheehy for the sum of twenty-five dollars per acre and that Sheehy would not pay more than the said twenty-five dollars per acre for said land, when in truth and in fact the defendant had, prior to the time he so falsely reported said sale to plaintiff, already executed a written contract for the sale of said land to Sheehy for the sum of $26.50 per acre by signing the name of plaintiff thereto by defendant, as his agent, and had then received five hundred dollars paid by Sheehy to bind said contract; that defendant collected all of the purchase money on said land, including two hundred and forty dollars, the excess said land brought over and

above twenty-five dollars per acre, the amount defendant reported to plaintiff said land was sold for; that at the time plaintiff executed the deed to Sheehy he was led to believe, through the false and fraudulent representations of defendant, that twenty-five dollars per acre was all that Sheehy was paying for said land and did not know that Sheehy was paying or that defendant was collecting from Sheehy the two hundred and forty dollars for which this suit is brought, etc., and prays judgment for two hundred and forty dollars.

The answer admits defendant is a real estate agent and broker; admits that about the tenth of February, 1903, plaintiff employed defendant to sell the land; denies that he was to sell the land for the sole agreed compensation of fifty dollars and avers that it was agreed between plaintiff and defendant that if the land was sold for the sole price of twenty-five dollars per acre, then defendant was to receive fifty dollars only from plaintiff as his commission, but in the event the land was sold for over twenty-five dollars per acre, defendant was to receive all sums over and above twenty-five dollars per acre for which said land might be sold in addition to the said fifty dollars as his commissions; admits that he negotiated the sale to Sheehy at $26.50; that he received out of the purchase money from Sheehy $1.50 per acre, in all two hundred and forty dollars, and from plaintiff the fifty dollars agreed upon as his commission.

The issues thus made up were tried by a jury.

E. F. Sheehy testified for the plaintiff, that prior to eleven o'clock a. m. on February 13, 1903, he contracted for the Woodard farm at $26.50 per acre, through T. A. Cooney, defendant, and left a check with Cooney for five hundred dollars which was afterwards paid on the land; that a written contract was executed by himself and T. A. Cooney signed it for Woodard, the plaintiff, at the time. (It seems this contract was read

in evidence in conjunction with this witness' testimony, without objection.    It was marked exhibit "A."    There appears in pencil a call for it in the bill of exceptions but it is nowhere to be found in the bill or record.) Witness further testified that after making this contract and payment he went to the depot at Edina in time for the eleven o'clock a. m. train to leave town, but the train was late and he remained at the depot until four o'clock in the afternoon when he departed; that the contract mentioned was delivered to him.

Patrick Woodard, the plaintiff, testified that he owned the one hundred and sixty acres of land in Knox county.    "Well, the first I knew, Mr. Cooney 'phones he had a buyer for my farm and wanted to know if I could come down and I told him I could.    It was about noon (just as I was eating dinner) on the day the sale or contract was made. He said the buyer would stay there until eight o'clock. 'Well,' I says, 'I can be down there in three hours and I was down there.    I got here in Edina, I guess, along about three o'clock.    I asked Mr. Cooney about my land buyer. 'Well.' he says, 'he has gone.' 'Why.' I says, 'you told me he would be here.' 'Well, he had to go home,' he says, 'he has gone.    He left an offer on the land.'    Mr. Cooney first says, 'what do you want for the land?'    'Well,' I says, 'I want thirty dollars an acre!' ".    Plaintiff insists that prior to this time he had had no conversation with Cooney whatever about selling the land for him.    "He (Cooney) says, 'I understood you would take twenty-five dollars per acre.' I told him I wanted thirty dollars an acre, and he said he had understood I would take twenty-five.  I says, 'not lately.'    I says, 'of course, one time I did offer to take twenty-five, but land has advanced, I have raised to thirty dollars.'    Well, he talked and said he was sorry he had made the trip out there and back.    He said he tried to get thirty, tried to get $27.50 and even tried to get $26 an acre, and got him (Sheehy) to promise him,

provided I would take and sign the contract, twenty-five dollars an acre, and if I could consummate the contract, when the mail came back, he (Sheehy) would send me five hundred dollars. Well, I finally agreed with him. I asked him, first, what his commission would be out of it. Well, he said he wanted one dollar an acre. I said, 'that settles it, we will not trade.' When I offered to take twenty-five dollars, I told him he might get his commission out of the man who bought the land. I wanted twenty-five dollars an acre. He figured a while and came down to one hundred dollars, then he came to seventy-five, then he said he would take fifty. He said he had been to trouble and all, and he said he would take fifty to make it go. Well, I agreed to take twenty-five an acre after he made me believe that was every cent he could get out of it. I wanted him to submit an offer of more than twenty-five to the purchaser and see if he could not do better. He said, 'No, that is the very last dollar he will pay,' and I finally agreed to give him fifty dollars. That was the understanding between us, that was the commission I was to pay him, that was the contract. At that time we drew up a contract between myself and Sheehy, the purchaser, to be sent to Iowa. That contract was for twenty-five dollars an acre, claiming he was selling the farm for us, when the contract got there Mr. Sheehy would send me five hundred dollars. When we were executing the contract that was the understanding; he was to send it to Iowa and he (purchaser) was to sign it and send it back. (It is admitted here that Cooney sold the farm for $26.50 per acre.) Sheehy took the land and Cooney got his fifty dollars. It was in June after this I found out he had sold the land for $26.50. I then went to Cooney about it and demanded the two hundred and forty dollars from him. He refused to pay it and offered me fifty dollars." (Objected to and objection sustained.)

On cross-examination, plaintiff testified that he had

no prior acquaintance with Mr. Cooney, knew him when he saw him, having heard some one say that was Mr. Cooney. "I had no conversation with him (Cooney) in September or October of last year or at any time about selling land in which I told him I wanted twenty-five dollars per acre for my land. He did not tell me that it was doubtful whether he could sell it for that, never had such a conversation whatever. I did not tell him, finally, that he could sell it for twenty-five dollars and I would give him fifty dollars and he could have all over twenty-five dollars he got for it in addition. I never had any conversation with Mr. Cooney at the foot of his office steps about this land or anything else, had no conversation with Mr. Cooney in the presence of Samuel Moore. When the contract was signed, February thirteenth, it was in Mr. Hollister's office, that is the only time we ever talked about his selling my land, that is the time I agreed to give him fifty dollars. I don't know where the contract is. Mr. Cooney had it the last I knew of it. I did not read the contract. Mr. Hollister read it to me; I believe it provided for twenty-five dollars per acre. There was a question there in Mr. Hollister's office about me taking a three-thousand-dollar mortgage on the land. I agreed to it and took the mortgage when the deeds were finally made. I made the deed read in consideration of fifty-six hundred dollars or thirty-five dollars per acre. Mr. Hollister told me that was the amount they wanted it to read. Mr. Hollister said Sheehy would borrow money on the land to pay me and they wanted the deed to read fifty-six hundred dollars. I knew at the same time that I was receiving twenty-five dollars only for the land and fifty dollars was to be paid Cooney but I never knew what Cooney got until June."

The above and foregoing is a fair synopsis of all the material evidence on the part of the plaintiff.

Defendant Cooney testified that he had known the

plaintiff about fifteen months; that he had, prior to the date of selling the land to Sheehy, made a contract with plaintiff to sell his land at twenty-five dollars net to him, and he was to have fifty dollars, and all over and above twenty-five dollars per acre he was able to sell the land for, in addition to the fifty dollars as his commission; that he sold the land at $26.50 per acre and collected from the purchaser $1.50 per acre, two hundred and forty dollars in all, and from plaintiff fifty dollars. Defendant admitted having signed a contract of sale on February thirteenth to Sheehy and receiving Sheehy's check for five hundred dollars as a payment on the land, but he did not tell plaintiff that he had the check then as it was not to be paid for ten days.

Witnesses Moore and Hollister testified for defendant in respect to the contract, to the same effect as defendant, and Mr. Hollister supported him in other particulars, on the main question, the contract, plaintiff's evidence stood alone against three.

Upon this state of facts the court properly instructed the jury on the law of the case. The jury returned a verdict for the plaintiff for the two hundred and forty dollars sued for. The judgment was properly rendered thereon, motions for new trial and in arrest were filed in due time, considered by the court, overruled, exceptions saved and an appeal was perfected to this court.

NORTONI, J.—The appellant assigns but one error. The assignment is in the following language: "The court erred in overruling defendant's motion for a new trial based upon the fact that the verdict of the jury was not the verdict of an impartial and unprejudiced jury and was not supported by the evidence, but was contrary to and against the overwhelming weight of the evidence." Upon this proposition, sole and only, he asks this court to reverse and remand the cause. It

is true, there was a conflict of testimony on the material issue. The plaintiff testified that defendant was to sell his land at twenty-five dollars per acre for a total commission of fifty dollars, and this was the only arrangement or contract he ever made with defendant about selling the land; that at this time defendant had then already contracted his land to Sheehy at $26.50 per acre and then had a check for five hundred dollars as a payment on the sale in his possession, and practiced deception upon plaintiff by telling him that he could not possibly induce the purchaser to pay more than twenty-five dollars per acre. Defendant says he had a prior arrangement with plaintiff to sell his land at twenty-five dollars per acre; that he was to have fifty dollars therefor and in event he sold for more than twenty-five dollars per acre he was to have all over and above twenty-five dollars he sold for in addition to the fifty dollars as his commission, and that this arrangement was reaffirmed on the day of sale by a writing drawn up by Hollister, binding plaintiff to sell the land to Sheehy, but admits having the check for five hundred dollars then in his possession but did not think he told Woodard about it; admits that he had signed plaintiff's name to a purported contract of sale at $26.50 per acre, prior thereto, on that very day. The two witnesses for defendant bore out his story in different parts. Here was a sharp conflict of testimony on the material point in the case.

The court after giving proper instructions on the issues, instructed the jury as follows:

"The court instructs the jury that you are the sole judges of the weight of the evidence and the credibility of the witnesses and in passing upon the weight to be given to the testimony of any witness you may consider the demeanor of the witness on the witness stand and the reasonableness or the unreasonableness of his evi-

dence when compared with all the other facts proven in the case."

This instruction means what it says. It does not mean that this court is the judge as to the credibility of the witnesses and the weight to be given to their testimony. It does mean that the jury is the sole judge in this behalf. The accumulated wisdom of ages show that there can be no safe rule other than this to follow. The jury is constituted of men, peers of the litigants. As the jurors sit in the box their senses are awakened and moved, their judgments appealed to, made up and matured by the same circumstances, considerations and truths that would move other disinterested men under like conditions. They have the witnesses before them upon the stand, face to face. The jurors can look the witness in the eye as he gives his testimony. They can notice the manner of his expression, take note of his general demeanor and carriage upon the stand and discern with what degree of frankness and candor, or of reservation, or seeming mental reservation he gives his story and can form an intelligent opinion as to whether a given witness is really aiding the discovery of the truth or is attempting to suppress it. As a rule the jury has a general idea, at least, of the character and standing of the witnesses in the community in which they reside, and in the final determination of the cause can and do bring all these into account when the evidence of the witnesses is being weighed in the balance along with that of other witnesses and the established facts of the case. These considerations, together with the humanity of man, the mercy and kindness in the human heart which at times tempers and modifies the rigors of the law are the fundamental principles upon which rest the popularity and perpetuity of our jury system. This being true, beyond refutation, then the courts who have none of these advantages to ascertain

the truth and the integrity of the statements made by taking the measure of the witnesses on the stand, certainly ought to ponder long before disturbing a verdict arrived at by intelligent men under the very best safeguards the evolution of the law and the experience of the centuries have been able to develop, and so it is the courts have laid down the general rule that when a verdict is supported by substantial evidence, the appellate courts will not interfere with the action of the trial court in overruling a motion for a new trial on the ground that the verdict is against the weight of the evidence nor will they interfere when the evidence is conflicting. [Cosgrove v. Leonard, 134 Mo. 419, 33 S. W. 777, 35 S. W. 1137; Manny v. Logeman, 105 Mo. App. 552, 80 S. W. 48; Haven v. Railway, 155 Mo. 216, 55 S. W 1035; James v. Mutual Reserve Fund Life Ass'n, 148 Mo. 1, 49 S. W. 973; Moore v. Railway, 73 Mo. 438; Bray v. Kremp, 113 Mo. 552, 21 S. W. 220; Harrison v. Bartlett. 51 Mo. 170.] To this general rule, however, there are the following exceptions. The appellate courts will interfere only in case there is no substantial evidence to support the verdict or in case that it appears on the record clearly that the verdict is arbitrary, or is the result of passion, prejudice or misconduct on the part of the jury. [Chouquette v. Railway, 152 Mo. 257, 53 S. W. 897; Burdict v. Railway, 123 Mo. 221, 27 S. W. 453; Friedman v. Pulitzer Pub. Co., 102 Mo. App. 683, 77 S. W. 340; Reid v. Ins. Co., 58 Mo. 421; Price v. Evans, 49 Mo. 396; Lockwood v. Ins. Co., 47 Mo. 50; Woolfolk v. Tate, 25 Mo. 597; Cosgrove v. Leonard, Manny v. Logeman, supra.]

Our Supreme Court, speaking through Judge MARSHALL, has well said: "It is not our practice to set aside a verdict when there is any evidence to support it, unless it shows on its face that it must have been the result of passion, prejudice or misconduct of the jury, and it is not enough that there is an insufficiency of evi-

dence; a case will not be reversed unless there is no evidence tending to establish the fact found by the jury. The fact that the verdict is not such as the appellate court would have reached upon the conflicting evidence adduced, will not warrant a reversal." [James v. Mut. Reserve Fund Life Ass'n, 148 Mo. 1. c. 15, 16, 49 S. W. 978.]

There is nothing in the record here tending to show misconduct on the part of the jury. There is nothing tending to show that the jury acted arbitrarily and disregarded the instructions of the court, nor is complaint made against the verdict on either of these grounds. There is nothing in the record that shows clearly that the verdict is the result of passion or prejudice on the part of the jury.

It is apparent that the jury believed plaintiff's testimony and found accordingly. The jury was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. It had the undoubted right to believe plaintiff and so find, if it saw fit to do so; or it had the right to believe defendant's testimony, if it saw fit to do so, and find against plaintiff on the issues. The jury chose to find the facts as the plaintiff stated them. With this we have nothing to do, if there is substantial evidence to support that finding. There is not only substantial but ample evidence to support the verdict in this case. There being nothing in the record to bring the case within the exceptions to the general rule above stated, to-wit, that the verdict is arbitrary or the result of passion, prejudice or misconduct on the part of the jury, it being supported by substantial evidence, the judgment of the trial court must be affirmed. It is so ordered.

*Bland, P. J.,* and *Goode, J.,* concur.