STANDARD MANUFACTURING COMPANY, Appellant, v. HUDSON, Respondent.

St. Louis Court of Appeals, June 19, 1905.

1. **CONTRACTS: Execution: Alteration.** In an action on a contract, where the defense of *non est factum* was interposed and the defendant's evidence tended to show that he had signed a printed form of contract with interlineations and changes, of which he retained a duplicate copy, while the contract sued on was the original printed form without such changes, declarations given by the court covering the entire case, are set out at length and held to correctly declare the law.

2. ———: ———: ———. Although the defendant testified that he could not discover any signs of interlineations or erasures in the contract sued on, yet his positive testimony that when he signed it, it was different, and like the duplicate in his possession, a finding of the trial court, who had the witnesses and the contract before him, that it was not executed, will not be disturbed; it was thus supported by substantial evidence.

Appeal from Barry Circuit Court.—*Hon. Henry C. Pepper*, Judge.

AFFIRMED.

*Peel & Sizer* and *Davis & Steele* for appellant.

A party is bound to know the contents of a writing signed by him and if he signs the same without reading

it or relying upon the representations of a stranger, he is nevertheless bound by the contract and cannot testify as to his understanding of the contract different from the plain language of the writing. He is bound by his agreement deliberately entered into. Guilliher v. Railroad, 69 Iowa 416; McCormick v. Moberly, 43 Iowa 561; Penny v. Martin, 4 Johns. Ch. 566; Story's Equity Jurisprudence, sec. 146; Butman v. Hussy, 30 Me. 263; Glen & Price v. Statler, 42 Iowa 107; McKinney v. Herrick, 66 Iowa 414; Bell v. Byerson, 11 Iowa 233; Rogers v. Place, .29 Ind. 377; 2 Parsons on Contracts, 722; Kerr on Fraud and Mistake, 77; Nebeker v. Cutsinger, 48 Ind. 436; McKegney v. Wideskind (Ky), 6 Bush. 107; Hotchkiss v. Carney, 12 N. W. 48 Mich. 276; Cash Register Co. v. Blumenthal, 48 N. W. 622, 85 Mich. 464. Beach on Modern Law of Contracts, sec. 818.

*George & Landis* for respondent.

Then it seems that the only point in this case is, was there competent and relevant evidence on which the court could find that the contract sued on was different from the one delivered by defendant to plaintiff. If so this court will defer to the finding of the trial court and will not disturb its verdict in an action at law. Swayze v. Bride, 34 Mo. App. 414; Smith v. Zimmerman, 51 Mo. App. 519; Todd v. Terry, 26 Mo. App. 598; Holt v. Johnson, 50 Mo. App. 373; Blanton v. Dold, 109 Mo. 64, 18 S. W. 1149. Hudson's testimony is positive that the contract was different when presented to him at the trial from the one delivered to plaintiff at the time of execution. There was also before the trial court the contract sued on; so that the trial court was in a better position to pass upon the evidence than the appellate court could possibly be. This being true and the evidence being amply sufficient to support the finding of the trial court, this court will not disturb its

finding.   Johnson v. Barnes, 23 Mo. App. 546; Watson
v. Fehlig, 59 Mo. App. 275.

STATEMENT.

This action is on a contract for the price of goods
sold and delivered.  The defendant, a merchant at Cass-
ville, purchased from plaintiff, an Illinois corporation,
through its traveling salesman, a quantity of flavoring
extracts, perfumes and toilet articles, etc., for which he
signed a written contract agreeing to pay therefor $173
in four equal installments, two, four, six and eight
months after date.  There were a number of provisions
in said written contract whereby a showcase was to be
furnished and defendant was required to keep the goods
constantly on display.   Certain profits were guaranteed
to defendant, etc., and certain invitation cards were to
be furnished him and be mailed out to his customers.
Upon the customer returning said card to him, he would
redeem the same by giving each holder thereof twenty-
five cents worth of goods of plaintiff's manufacture free
of charge.   This was a means of advertising at plaintiff's
expense.   There were other provisions, all of which,
with those last mentioned, are immaterial here, how-
ever, and will not be further noticed.

The day the invoice came to hand, defendant wrote
plaintiff that he had received the invoice but that it was
not according to the contract and declined to accept the
goods.   Several letters of complaint passed from the
defendant to plaintiff.   Upon the payments coming due
under the provisions of the contract, this suit was insti-
tuted in the circuit court of Barry county for the price
of said goods.

Defendant's answer admits that plaintiff shipped
him the goods mentioned and avers the affirmative de-
fense of *non est factum* as follows: "Defendant for an-
swer to plaintiff's petition says that he did not sign or
deliver to plaintiff the contract filed with plaintiff's pe-

tition nor any contract of which the same is a copy."
This answer is verified by the oath of defendant.

The issue thus made up, a jury being waived, was
tried by the judge. Plaintiff introduced the contract
and admission contained in defendant's answer, admitting that the goods had been shipped by plaintiff to him.
Thereupon the defendant was put upon the stand. He
examined the contract and swore that it was signed by
him. Thereupon the plaintiff rested.

To sustain the issues of *non est factum* on his part,
defendant testified in substance that he was called upon
by plaintiff's agent; that he and the agent had some conversation about the matter and the agent made the
changes in the printed form as to six payments instead
of four, as contended for by defendant, in his presence;
that he saw the changes made therein and that they
were made when he signed the contract and that the
contract now appears without such changes in it. Witness Bayless also swore that he saw the agent writing
on the contract just before defendant signed it. Defendant testified that the contract was read to him by
the agent with its changes and a so-called duplicate,
anyway a copy of the printed contract with the changes
in it, as contended for by defendant, was delivered to
him by the agent at the time. This so-called duplicate
was introduced in evidence and compared in the trial
court and was as testified to by defendant. The defendant testified positively that, while he was unable to say
how the contract had been changed, he had not signed
it as it now appeared.

"Q. You did not see whether your duplicate and
this was just alike? A. They were just the same. . .

"Q. You couldn't say there had been any changes in
this that you can discover from reading it? A. You
can't get me to say that. I wouldn't say that for the
world . It had them changes in it, it was there when I
signed it.

"Q. Will you swear those words in this duplicate were in this when you signed it? A. Yes, sir, was there but was changed, it was an exact duplicate of the one I have got.

"Q. How do you know it if you didn't read it? A. It was changed there before my eyes.

"Q. Didn't you say you never read anything on it but relied on the reading of the agent? A. Yes, sir, I say that time I didn't read it, he changed it before I signed it. I wouldn't sign it before he changed it. . .

"A. Yes, sir, when he put that in there, he handed it right to me, and he had hold of it when I signed it. He was very careful. . . .

"A. I know he changed it.

"Q. You say you did not see any indications of any changes? A. A man can know some things, and I know he changed that contract before I signed it, then I put my name to it, and then he gave me a duplicate and then got out quick."

Nothing in evidence shows whether the contract was filled out in ink or pencil, except that it was signed in indelible pencil.

The original contract upon which suit was brought and which was introduced in evidence at the trial, failed to show any of the changes therein as testified to by defendant, that is, it appears to have been the original printed form as printed by the company without any of the interlineations which defendant insists were made therein before he affixed his signature thereto. If this is true, then the contract sued upon is not the same contract he signed. Both the original contract and the copy thereof furnished defendant by the agent at the time were before the trial court in evidence and subject to examination and comparison for alterations or erasures, if any had been made therein. A peremptory instruction to find for plaintiff was refused and five declarations of law given which will be hereafter noticed.

The trial court found the issues for the defendant. Plaintiff appeals to this court and insists that inasmuch as defendant admitted signing the contract and failed to point out any interlineations or erasures therein, he failed to sustain his defense of *non est factum* and therefore the finding of the court was error.

NORTONI, J. (after stating the facts).—The following declarations of law were given by the court:

"(a)   The court declares the law to be that all statements, conditions and understandings of the parties, at the time of executing the contract sued on, or discussed prior thereto, including the purported duplicate introduced in evidence, different from the contract signed by defendant are conclusively presumed to have been abandoned by the parties; and the contract signed by the defendant is conclusively presumed to contain all that the minds of the parties agreed upon.

"(b)   The court sitting as a jury declares the law to be that the defendant is conclusively presumed to know the contents of the contract which he signed, and he will not be permitted to show that he did not read it and agree to all of its terms, and his failure to read it does not alter or change his liability under said contract.

"(c)   The court declares the law to be that even though the court may believe from the evidence that the purported duplicate of the contract offered in evidence by the defendant may not be the same, or may be different from the original sued on, yet if the one signed by the defendant has not been changed since signing it, then that would not alter or invalidate the one he did sign and the issues must be for the plaintiff.

"(d)   The court sitting as a jury declares the law to be that a party is bound to know the contents of a writing signed by him, and if he signed the same without reading it or relying upon the representation of a stranger, he is nevertheless bound by the contract and cannot

testify as to his understanding of the contract different from the plain language of the writing. He is bound by his agreement deliberately entered into."

These instructions correctly declared the law of the case as has been settled by former adjudications in this State. [See Crim v. Crim, 162 Mo. 544, 63 S. W. 489; Kellerman v. Railroad, 136 Mo. 177, S. W. 41, 37 S. W. 828; Mateer v. Railroad, 105 Mo. 320, 16 S. W. 839; O'Bryan v. Kinney, 74 Mo. 125; Snider v. Adams Express Co., 63 Mo. 376; Johnson v. Cov. Mut. Ins. Co., 93 Mo. App. 580.]

The court also declared the law as follows:

"The court declares the law to be that the burden of proof is upon the defendant to show by a preponderance of the evidence that he did not sign the contract sued on, and unless he has shown by a preponderance of the testimony, the finding should be for the plaintiff."

This is a correct declaration of the law on the subject and put the burden of proof upon the respondent to show by a preponderance of the evidence that he had not signed the contract as it then appeared and therefore it was not his deed. The result is, if there is substantial evidence in the record to support the finding of the trial court, we are not authorized to interfere therewith unless it appears clearly from the record that the verdict is arbitrary or the result of passion, prejudice or misconduct and there is no suggestion to this effect in the case. [Woodard v. Cooney, 111 Mo. App. 152, and cases cited therein. See also Weber v. Amer. Cen. Ins. Co., 35 Mo. App. 521; Blanton v. Dold, 109 Mo. 64, 18 S. W. 1149; Holt v. Johnson, 50 Mo. App. 373; Swayze v. Bride, 34 Mo. App. 414.]

There was substantial evidence before the trial court to support the finding. The respondent was positive that he had caused certain interlineations to be made in the contract before he signed it and that after the changes were made, the contract was the same as the purported copy the agent furnished him. The mere fact

that respondent testified at the trial that he could not then discover any signs of interlineations or erasures would not justify this court in setting up its judgment against that of the learned trial judge who saw and heard the witnesses and had an opportunity to form an intelligent opinion of their credibility and the truth of their statements, for respondent insisted in his testimony that he knew the contract had been changed even though he could not point out the physical evidence thereof on the paper itself, and in this connection we must remember that the trial court had the original contract and purported duplicate before it where it could compare the two and could, and no doubt did, examine closely (with the aid of a glass, if need be) for evidence of prior interlineations and erasures thereof and that the court took into account the physical appearance of the contract, along with the testimony of respondent when forming its judgment, as to whether or not the contract had been changed and accordingly found it to have been changed and therefore not respondent's deed.

Finding no error in the record, the judgment must be affirmed. It is so ordered. All concur.